## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLIOTT WERNER, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> EQUITY RESIDENTIAL, ERP OPERATING LIMITED PARTNERSHIP, and EQUITY RESIDENTIAL MANAGEMENT LLC, <br><br>                 Defendants. | Case No.: 1:25-cv-06130 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Elliott Werner ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants Equity Residential, ERP Operating Limited Partnership, and Equity Residential Management, LLC (collectively, "Defendants").

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit by Plaintiff and other tenants who had their security deposits illegally retained by Defendants and tenants who were issued compensatory funds from Defendants in the form of non-fungible account credit.

2.      Plaintiff and the putative class members entered into rental lease agreements with Defendants under the understanding that the security deposits they gave to Defendants upon signing their leases would be returned to them, minus any legitimate charges. However, Defendants knowingly and deceptively withheld portions of Plaintiff's and Class members' deposits for costs related to ordinary wear and tear of occupancy and failed to provide them with itemized statements of deposit reflecting such charges as required by law.

3. Moreover, Defendants unlawfully failed to return any amount of Plaintiff's and tenants' security deposits lawfully owed to them within the 14 day period as required by law.

4. In fact, Plaintiff, as well as other Class members, has still not received their entire security deposits back despite moving out well over 14 days prior to the commencement of this action.

5. Further, when Defendants issued funds to Plaintiff and Class Members in compensation for uninhabitable conditions within their apartments, they did so in the form of account credits which could not be redeemed for cash, nor were they applied to Plaintiff and Class Members' other charges as credit.

6. Defendants are real estate management companies and/or landlords.

7. Defendants' deceptive handling of Plaintiff's and Class members' security deposits violates New York General Business Law § 349 and New York General Obligations Law § 7-108 (1-a) (b) and (e), is a breach of contract including the covenant of good faith and fair dealing, unjustly enriches Defendants, and is negligent misrepresentation.

## THE PARTIES

8. Plaintiff Elliott Werner resides in New York, New York and is therefore a citizen of New York.

9. In November 2023, Mr. Werner signed a lease to rent an apartment unit from Defendants located at 41 West 86th St., New York, New York, 10024 for $3,061 per month. The lease was scheduled to end on or around February 23, 2025.

10. 41 West 86th St. is a residential rental building that houses 166 units and is known as Parc Cameron.

11. At or around the same time that he signed the lease, Mr. Werner paid a security

deposit totaling $1,000 to Defendants.

12.    On or around January 23, 2025, approximately a month before Mr. Werner moved out, the bathroom in his apartment flooded, causing damage to his belongings, requiring repairs, and making the apartment temporarily uninhabitable.

13.    As a result of the flood, Defendants performed a cleaning of the apartment and agreed to a $816.24 "Collection Settlement" with Mr. Werner.  This amount was promised to him by Melissa Spearman, a property management professional employed by Equity Residential.

14.     However, Defendants never made this credit available by check or cash, instead issuing it solely as a non-redeemable credit to Mr. Werner's tenant account. The credit was never used by Defendants to go towards any of Mr. Werner's expenses, including rent.

15.    Mr. Werner ultimately moved out on or around February 23, 2025.

16.    Upon moving out, Mr. Werner's credit was still posted to his account. He has still not received this payout.

17.    On or around March 14, 2025, nineteen days after Mr. Werner moved out, Defendants posted a statement to an online portal reflecting charges against his deposit, including a $117.36 "Apartment Cleaning" fee, a $142.36 "Apartment Painting" fee, and a $109.32 "Insufficient Notice" fee.

18.    Defendants have failed to return any portion of Mr. Werner's security deposit.

19.    Defendant Equity Residential ("EQR") is a real estate investment trust incorporated in Maryland with its principal place of business at Two North Riverside Plaza, Chicago, Illinois 60606. Equity Residential is "one of the largest and most established developers, owners, and managers of residential communities in NYC and the US."[1]

---

[1] https://streeteasy.com/property_management_companies/120?site=nyc.

20.     Defendant ERP Operating Limited Partnership ("ERP") is a Delaware limited partnership with its principal place of business at Two North Riverside Plaza, Chicago, Illinois 60606. ERP is the sole general partner of Equity Residential and holds substantially all of Equity Residential's assets.

21.     Defendant Equity Residential Management, LLC., ("ERM") is a Delaware limited liability company with its principal place of business at Two North Riverside Plaza, Chicago, Illinois 60606. ERM conducts the day-to-day management at the Parc Cameron apartment building and was the lessor for Plaintiff's lease agreement.

22.     Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

23.     Defendants represent themselves to be the owners and/or managers of 41 West 86th St., New York, New York, 10024.

24.     On StreetEasy, a popular website showcasing New York City real estate information and listings, Defendant Equity Residential is listed as the leasing team, management, team, marketing team, and developer of 41 West 86th Street, New York, NY 10024.[2] Further, Equity Residential manages its own profile on StreetEasy.[3] On this profile, Equity Residential lists "Our buildings" including "Rental Building In Upper West Side Parc Cameron 41 West 86th Street.[4]

25.     The lease agreement between Defendants and Plaintiff lists Defendant Equity

---

[2] https://streeteasy.com/building/parc-cameron.

[3] https://streeteasy.com/property_management_companies/120?site=nyc.

[4] *Id.*

Residential Management, L.L.C, as the lessor agent for the Owner.

**JURISDICTION AND VENUE**

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendants.

27.     This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

**FACTUAL BACKGROUND**

A.     **New York General Obligations Law § 7-108**

29.     On June 14, 2019, the Housing Stability and Tenant Protection Act (HSTPA) was signed into law to address significant and longstanding issues in New York's housing market.

30.     The HSTPA added and amended various provisions of New York state housing laws to better protect tenant interests and to protect New Yorkers from landlord exploitation.

31.     New York General Obligations Law § 7-108, as amended by the HSTPA, set forth new procedures that landlords of non-rent stabilized apartments must comply with in handling tenants' security deposits.

32.     It provides, in relevant part, that:

> (b) The entire amount of the deposit or advance shall be refundable to the tenant upon the tenant's vacating of the premises except for an amount lawfully retained for the reasonable and itemized costs due to non-payment

5

of rent, damage caused by the tenant **beyond normal wear and tear**, non-payment of utility charges payable directly to the landlord under the terms of the lease or tenancy, and moving and storage of the tenant's belongings. **The landlord may not retain any amount of the deposit for costs relating to ordinary wear and tear of occupancy or damage caused by a prior tenant.**

. . .

(e) **Within fourteen days** after the tenant has vacated the premises, the landlord shall provide the tenant with an itemized statement indicating the basis for the amount of the deposit retained, if any, and shall return any remaining portion of the deposit to the tenant. If a landlord fails to provide the tenant with the statement and deposit within fourteen days, the landlord shall **forfeit any right** to retain any portion of the deposit.

. . .

(g) Any person who violates the provisions of this subdivision shall be liable for actual damages, provided a person found to have willfully violated this subdivision shall be liable for punitive damages of up to twice the amount of the deposit or advance**.**

. . .

(3) Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be absolutely void.

N.Y. Gen. Oblig. Law § 7-108(1-a)(b)-(g), (3) (McKinney) (emphasis added).

## B. Defendant deceptively retained Plaintiff's security deposit and charged illegal fees

33.     In November 2023, Plaintiff signed a lease with Defendant for the rental of an apartment unit located at 41 West 86th St, New York, New York, 10024 at a rent of $3,061 per month. The lease was scheduled to end on or around February 23, 2025.

34.     At or around the same time that he signed the lease, Plaintiff paid a security deposit totaling $1,000 to Defendants.

35.     The lease agreement stated that tenants "are responsible for keeping the Premises in a clean, sanitary, an undamaged, condition, ordinary wear and tear excepted." It further set forth that Defendants would conduct an inspection of Plaintiff's apartment after he moved out, charge for any damage beyond ordinary wear and tear, and refund to Plaintiff the remaining balance.

36.     On December 27, 2024, Plaintiff notified Defendants that he intended to move out upon the expiration of the lease.

37.     In an email sent to Plaintiff on February 5, 2025 from Galib Uzeiroski, a leasing specialist for Equity Residential, Defendants stated that any charges for damages to the apartment would be included in a "Statement of Deposit that will be mailed to you" and that Plaintiff could expect to receive the remaining refund "approximately 4 weeks after [Plaintiff's] move out date."

38.     Plaintiff ultimately moved out on February 23, 2025, and Defendants conducted an inspection of Plaintiff's apartment shortly thereafter.

39.     However, Defendants failed to return Plaintiff's security deposit or provide an itemized statement of deposit reflecting charges against Plaintiff's security deposit within 14 days of his moving out. Instead, it wasn't until March 14, 2024, 19 days after Plaintiff moved out, when Defendants uploaded a statement to an online resident portal, and Plaintiff has yet to receive any portion of his security deposit.

40.     The statement indicated various wear and tear charges against Plaintiff's deposit, including a $117.36 "Apartment Cleaning" fee and a $142.36 "Apartment Painting" fee. The statement does not provide any further specification as to what part of the apartment was in need of cleaning or painting or how the fee amounts were calculated.

41.     Defendants also charged a $109.32 "Insufficient Notice" fee against Plaintiff's deposit. This was based on Plaintiff's failure to comply with Defendants' requirement to notify them 60 days prior to his lease ending whether he intended to renew.  Plaintiff notified Defendants 59 days prior.

42.     On April 1, 2025, after seeing the statement on his online portal, Mr. Werner emailed Ray Colon, his point of contact for his move out, and inquired about the charges to his

account and when he could expect to receive his deposit back.

43.     Mr. Colon is an Assistant Community Manager at Equity Residential and was in charge of Mr. Werner's building.

44.     Ten days later, on April 10, 2025, Mr. Werner followed up with Mr. Colon again after not receiving a response to his initial email.  In his April 10, 2025 email, Mr. Werner told Mr. Colon that he would like clarification on some of the fees, as well as "reimbursements of the cleaning and painting fee charges that were deducted from my security deposit."

45.     Mr. Werner further stated to Mr. Colon that "NYC tenant law requires landlords to return the security deposit within 14 days after a tenant vacates the unit. By now, it has been nearly two months since I moved out, and I have yet to receive my deposit or the $816.24 flood credit. I also haven't received any response to my previous inquiry." Mr. Werner provided a mailing address for his deposit to be returned to.

46.     On that same day, April 10, 2025, Mr. Colon responded to Mr. Werner via email stating that "the paint and cleaning charges are determined by the condition of the apartment immediately after you move out." Mr. Colon did not address reimbursement of the $816.24 flood credit, or the disbursement of Mr. Werner's security deposit.

47.     The condition of Mr. Werner's apartment at the time of move out had no damages beyond ordinary wear and tear, if any at all.  This is especially true given the fact that just a month before moving out, Defendants hired a professional cleaning company to clean Mr. Werner's unit after it had flooded.

48.     Defendants do not, and cannot, reference any specific conditions within the apartment which amount to damage beyond ordinary wear and tear of occupancy as would be necessary to impose such charges under New York law.

49.     Plaintiff has still not received his security deposit.

50.     Defendants' post-move out inspection revealed only superficial marks or dirtiness in certain areas of the apartment. Indeed, the "General Notes" section of the inspection contains a documentation that the "[a]partment [was] in good condition."

51.     Had Plaintiff known that he would be illegally charged for costs relating to ordinary wear and tear of occupancy or that Defendant would fail to return his security deposit in a timely manner, or at all, he would not have entered into a lease agreement with Defendants.

**C. Defendants issues credits which are unredeemable for cash value**

52.     On or around January 23, 2025, the bathroom in Plaintiff's apartment flooded, causing damage to Plaintiff's belongings.

53.     The resulting damage also required continuous repairs, necessitating the presence of workers at the apartment and making the bathroom unusable.

54.     In response to the flood and the temporarily uninhabitable conditions it caused, Defendants agreed to pay a $816.24 "Collection Settlement" to Plaintiff.

55.     However, Defendants issued this settlement in the form of a credit to Plaintiff's tenant account. Such a credit is incapable of being redeemed for cash value.

56.     Nor did Defendants put the $816.24 credit towards rent payments or other payments owed to Defendants by Mr. Werner. The credit was illusory as it was unusable and inaccessible to Mr. Werner.

**CLASS REPRESENTATION ALLEGATIONS**

57.     Plaintiff seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the United States, paid a security deposit to Defendants, and have not received any portion of it back from Defendants ("Deposit Class").

58.    Plaintiff seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the State of New York, paid a security deposit to Defendants, and have not received any portion of it back from Defendants ("New York Deposit Subclass").

59.    Plaintiff also seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the United States and were issued a nonredeemable credit to their account ("Credit Class").

60.    Plaintiff also seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the State of New York and were issued a nonredeemable credit to their account ("New York Credit Subclass").

61.    Plaintiff also seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the United States, paid a security deposit to Defendants, and had unlawful deductions from their deposit for ordinary wear and tear ("Wear and Tear Class").

62.    Plaintiff also seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the State of New York, paid a security deposit to Defendants, and had unlawful deductions from their deposit for ordinary wear and tear ("New York Wear and Tear Subclass").

63.    Plaintiff also seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the State of New York, paid a security deposit to Defendants, and did not receive their security deposit back within the required 14 day period from move out or only receive a partial amount of their security deposit back after the 14 day period ("14 Day Class") (referred together with the New York Deposit Subclass, New York Credit Subclass, Wear and Tear Subclass as the "New York Classes").

64.     The Deposit Class, Credit Class, and Wear and Tear Class, will be referred to collectively as the "Classes."

65.     **Numerosity.** Members of the Classes and the New York Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes and the New York Classes number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class and members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

66.     **Commonality.**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include but are not limited to, the following:

> (a) Whether Defendants charged Class members for costs relating to ordinary wear and tear;
>
> (b) Whether Defendants failed to refund Class and members' security deposits deposits within 14 days of their moving out or at all;
>
> (c) Whether Defendants issued credits to Class members which were unredeemable for cash value;
>
> (d) Whether Defendants made breached its contract with Plaintiff and Class members including the covenant of good faith and fair dealing by making misrepresentations;
>
> (e) Whether Defendants' representations, omissions, and/or breaches caused injury to Plaintiff and Class members;
>
> (f) Whether Defendants were unjustly enriched; and
>
> (g) Whether Plaintiff and Class members are entitled to damages.

67.     **Typicality.** The claims of the named Plaintiff are typical of the claims of the Classes and the New York Classes in that the named Plaintiff never received his security deposit

back, had deductions from his security deposit for ordinary wear and tear, and received unredeemable credit to his account with Defendants.

68.    **Adequacy.** Plaintiff is an adequate representative of the Class and the New York Classes because his interests do not conflict with the interests of the classes he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by Plaintiff and his counsel.

69.    **Superiority.** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the classes.  Each individual member of the Classes and the New York Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### FIRST CAUSE OF ACTION
**Violation of N.Y. Gen. Bus. Law § 349**

70.    Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

71.    Plaintiff brings this claim on behalf of himself and the New York Classes.

72.    Plaintiff and members of the New York Classes are "persons" within the meaning of the GBL § 349(h).

73.    Defendants each constitute a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

74.    Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

75.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by failing to return Plaintiff's and New York Class members' security deposits and provide them with itemized statements within 14 days, charging Plaintiff and Subclass members for cost related to ordinary wear and tear of occupancy, and by refunding Plaintiff and Subclass members in the form of account credits which could not be redeemed for cash.

76.    Specifically, Defendants ensured tenants and prospective tenants that by paying a security deposit, they were promised to have it returned to them within 14 days of vacating their unit.  Tenants and prospective tenants also were promised they would receive the full amount of their security deposit back except for any damage beyond ordinary wear and tear.

77.    After entering into leases with Defendants however, Plaintiff and New York Class members were deceived in that they did not receive their security deposits back within the 14 day period, and/or Defendants' unlawfully subtracted from their deposits for ordinary wear and tear or other unlawful fees.

78.    Defendants' conduct is consumer-oriented because it targets tenants and prospective tenants.

79.    Defendants' conduct is unfair in a material way in that Plaintiff and New York Class members would not have entered into a lease with Defendants had they known their security deposits would be mishandled.

80.    Defendants' conduct violated the express representations made in Plaintiff and New York Class members' leases.

81.    Defendants' conduct is also unfair in a material way because it fails to comport with New York's Gen. Oblig. Law § 7-108.

82.    Plaintiff and Subclass members were injured as a result because they had their deposits withheld from them for longer than 14 days, were made to pay illegal fees related to ordinary wear and tear, and/or received refunds in the form of account credits, not cash.

## SECOND CAUSE OF ACTION
### Violation of the N.Y. Gen. Oblig. Law § 7-108 (1-a)(b)

83.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

84.    Plaintiff brings this claims on behalf of himself and the New York Wear and Tear Subclass.

85.    N.Y. Gen. Oblig. Law § 7-108(1-a)(b) states that for rentals of "all dwelling units in residential premises," "The entire amount of the deposit or advance shall be refundable to the tenant upon the tenant's vacating of the premises except for an amount lawfully retained for the reasonable and itemized costs due to non-payment of rent, damage caused by the tenant beyond normal wear and tear, non-payment of utility charges payable directly to the landlord under the terms of the lease or tenancy, and moving and storage of the tenant's belongings. The landlord may not retain any amount of the deposit for costs relating to ordinary wear and tear of occupancy or damage caused by a prior tenant."

86.     Defendants retained from Plaintiff's security deposit a $117.36 "Apartment Cleaning" fee and a $142.36 "Apartment Painting" fee.

87.     Per Defendants' email sent on or around April 10, 2025, the charges were "determined by the condition of the apartment immediately after [Mr. Werner] move[d] out."

88.     However, the move out inspection conducted by Defendants revealed only superficial marks or dirtiness in certain areas. The move-out inspection revealed no damage beyond ordinary wear and tear of occupancy.

89.     Defendants were thus not entitled to retain any portion of Plaintiff's security deposit for the cost of cleaning or painting the apartment after Plaintiff had moved out.

90.     On behalf of himself and the New York Wear and Tear Subclass members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover his actual damages, punitive damages as the Court finds appropriate, and reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Violation of the N.Y. Gen. Oblig. Law § 7-108(1-a)(e)**

91.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiff brings this claims on behalf of himself and the 14 Day Class.

93.     N.Y. Gen. Oblig. Law ("GOL") § 7-108 (1-a)(e) states that for rentals of "all dwelling units in residential premises," "[w]ithin fourteen days after the tenant has vacated the premises, the landlord shall provide the tenant with an itemized statement indicating the basis for the amount of

the deposit retained, if any, and shall return any remaining portion of the deposit to the tenant.  If a landlord fails to provide the tenant with the statement and deposit within fourteen days, the landlord shall forfeit any right to retain any portion of the deposit."

94.     Moreover, Defendants charged fees against Plaintiff's deposit after the 14 day period, despite forfeiting the right to retain that portion of the deposit under GOL § 7-108 (1-a)(e).

95.     Plaintiff did not receive an itemized statement indicating the basis for the retention of any portion of his security deposit within 14 days of Plaintiff moving out.

96.     Further, when Defendants eventually uploaded a statement to an online tenant portal, Defendants failed to return any remaining portion of the deposit to Plaintiff within 14 days of vacating his unit.

97.     On behalf of himself and the 14 Day Class members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover his actual damages, punitive damages as the Court finds appropriate, and reasonable attorneys' fees.

<u>**FOURTH CAUSE OF ACTION**</u>
**Breach of Contract Including the Covenant of Good Faith and Fair Dealing**

98.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

99.     Plaintiff brings this claim on behalf of himself and the Classes.

100.     Plaintiff and all members of the Classes have contracted with Equity Residential for the lease of a rental apartment.

101.     In the lease agreement, Defendants represent that renters are not responsible for cost related to ordinary wear and tear, stating "[tenants] are responsible for keeping the Premises in a clean, sanitary, an undamaged, condition*, ordinary wear and tear excepted*" (emphasis added). Further, the lease agreement represents that, after any applicable charges are made to a tenants' security deposits, the remaining balance of the security deposit will be refunded to them.

102.    Defendants breached promises made to Plaintiff and all members of the proposed Classes, as described herein, when Defendants charged tenants for cost relating to ordinary wear and tear, unlawfully retained tenants' security deposits, and issued nonredeemable credit.

103.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the party to receive the fruits of the contract.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts

104.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference or failure to cooperate in the other party's performance

105.    Defendants acted in bad faith by choosing to charge tenants for costs related to ordinary wear and tear despite representing that they would not be responsible for such cost, by withholding tenants' security deposits despite representing that they would have their deposits returned to them, and by issuing compensatory payments in the form of nonredeemable account credit. This bait and switch evaded the spirit of the bargain and violated the obligation of good faith in performance.

106.    Defendants further acted in bad faith when assuring Plaintiff and Credit Class members that they would be compensated for the uninhabitable conditions of their units, when in reality Defendants had no intention of doing so.

107.    On behalf of himself and the Class members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover his actual damages, punitive damages as the Court finds appropriate, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

108.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

109.    Plaintiff brings this claim on behalf of the Classes and the 14 Day Class.

110.    Plaintiff and Class members conferred benefits on Defendants when Defendants retained Plaintiff's and Class members' security deposits and when Defendants charged them fees for costs relating to ordinary wear and tear of occupancy.

111.    Plaintiff and Class members conferred further benefit on Defendants when Defendants issued compensatory funds to Plaintiff and Credit Class members in the form of nonredeemable account credit. This conferred benefit because Defendants retain the value of such credit until it is redeemed (if ever), and because such credit can only be used to pay Defendants.

112.    Defendants have knowledge of such benefits they retained.

113.    Retention of this money under these circumstances is unjust and inequitable because withholding tenants' security deposits for longer than 14 days, charging tenants for cost relating to ordinary wear and tear, and issuing compensatory credits in the form of nonredeemable account credits is illegal and void under New York law. Specifically,

Defendants' actions are void according to N.Y. Gen. Bus. Law § 349 and N.Y. Gen. Oblig. Law § 7-108.

114.    As sophisticated New York City real estate ownership and management companies, Defendants were and are well aware that their actions violate New York law.

115.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

### SIXTH CAUSE OF ACTION
**Negligent Misrepresentation**

116.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

117.    Plaintiff brings this claim on behalf of himself and the Classes.

118.    Plaintiff and Defendants shared a special or privity-like relationship because Defendants are sophisticated and experienced real estate owners and/or managers who entered into a lease agreement with Plaintiff. Defendants thus had a duty to impart correct information to the plaintiff regarding Plaintiff's rights and obligations relating to the agreement.

119.    The information imparted upon Plaintiff was incorrect because Defendants represented that he would receive a refund of his security deposit, minus any legitimate charges, and that he would not be responsible for cost relating to ordinary wear and tear.

120.    Further, the information imparted upon Plaintiff regarding the compensatory repayment due to the uninhabitable condition of his apartment was incorrect because it was issued in the form of a nonredeemable credit.

121.    Directly contrary to these representations, Plaintiff and Class members did not receive refunds of their security deposits within the expected timeframe, Plaintiff and Class members were charged for costs relating to ordinary wear and tear, and Plaintiff and Class members received nonredeemable credits for compensatory payments owed by Defendants.

122.    Plaintiff and Class members reasonably relied on Defendants' statements because they paid security deposits to Defendants under the belief that the deposits would be refunded to them promptly following their moving out, minus and legitimate charges, that they would not be charged for cost relating to ordinary wear and tear, and that they would be compensated for the uninhabitable condition of their apartments.

123.    But for Defendants' misrepresentations, Plaintiff and other Class members would not have entered into rental agreements with Defendants.

## **RELIEF DEMANDED**

124.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.    For an order certifying the Classess under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes, and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.  For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  July 25, 2025                          Respectfully submitted,

                                              **BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
                  Philip L. Fraietta

Philip L. Fraietta
Israel Rosenberg
Caroline C. Donovan
1330 Avenue of the Americas, Floor 32
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  pfraietta@bursor.com
           irosenberg@bursor.com
           cdonovan@bursor.com

*Attorneys for Plaintiff*