**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOTT WERNER, individually and on behalf of all others similarly situated, <br><br>                  Plaintiff, <br><br>        v. <br><br> EQUITY RESIDENTIAL, ERP OPERATING LIMITED PARTNERSHIP, and EQUITY RESIDENTIAL MANAGEMENT LLC, <br><br>                Defendants. | Case No. 1:25-cv-06130-VSB-SLC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**EQUITY RESIDENTIAL, ERP OPERATING LIMITED PARTNERSHIP, AND**
**<u>EQUITY RESIDENTIAL MANAGEMENT, LLC'S MOTION TO DISMISS</u>**

**DLA PIPER LLP (US)**

Keara M. Gordon
Rachael C. Kessler
Bradley Jennings
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
keara.gordon@us.dlapiper.com
rachael.kessler@us.dlapiper.com
bradley.jennings@us.dlapiper.com

*Counsel for Defendants Equity Residential, ERP Operating Limited Partnership and Equity Residential Management, LLC*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

    A.    **EQR, ERM, and ERP.** ........................................................................ 2

    B.    **The Named Plaintiff** .......................................................................... 3

        1.    *The Plaintiff Signs a Lease, Provides a Security Deposit, and Moves Into the Parc Cameron.* ...................................................... 3

        2.    *The Plaintiff Receives a Concession After a Water Leak Impacted His Apartment.* ................................................................ 3

        3.    *The Plaintiff Vacates His Apartment, ERM Provides Him a Statement of Deposit Account, and Mails Him a Check for the Balance of His Security Deposit.* ................................................. 4

        4.    *ERM Revises the Plaintiff's SODA and Mails Him a Check for the Concession.* .................................................................................... 4

        5.    *ERM Reissues the Checks to the Plaintiff.* ................................... 5

LEGAL STANDARDS ............................................................................................ 5

        1.    *Rule 12(b)(6) Dismissal for Failure to State a Claim.* ................ 5

        2.    *Rule 12(b)(1) Dismissal for Lack of Standing.* ........................... 6

ARGUMENT ........................................................................................................... 6

I.      THE PLAINTIFF LACKS STANDING TO PURSUE CERTAIN CLAIMS. ............ 6

II.     THE COMPLAINT RELIES ON AN IMPERMISSIBLE GROUP PLEADING AND THEREFORE MUST BE DISMISSED IN ITS ENTIRETY. ............................ 9

III.    SEVERAL OF THE CLAIMS ALSO FAIL AS A MATTER OF LAW. ..................... 11

    A.    **The N.Y. GBL Section 349 Claim Must Be Dismissed.** ................... 11

        1.    *The Plaintiff Fails to Allege Consumer-Oriented Conduct.* ...... 11

        2.    *The Plaintiff Fails to Allege Deceptive Conduct.* ..................... 15

    B.    **The Covenant of Good Faith and Fair Dealing Claim Must Be Dismissed as Duplicative.** ..................................................................... 16

    C.    **The Unjust Enrichment Claims Must Be Dismissed.** ...................... 18

    D.    **The Negligent Misrepresentation Claim Must Be Dismissed.** ......... 21

        1.    *The Economic Loss Rule Bars the Negligent Misrepresentation Claim.* .. 21

i

2.    *The Negligent Misrepresentation Claim Fails Because the Plaintiff Has Not Alleged a Duty or Special Relationship.* ............................................ 23

**E.    The Plaintiff Lacks Standing for His Injunctive Relief Claim.** ...................... 25

**CONCLUSION** ............................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
  2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ............................................................7

*Aguaiza v. Vantage Props.*,
  2009 WL 1511791 (Sup. Ct. N.Y. Cnty. May 21, 2009), *aff'd*, 69 A.D.3d 422
  (1st Dep't 2010) .......................................................................................12, 13, 14

*Amaya v. Ballyshear LLC*,
  340 F. Supp. 3d 215 (E.D.N.Y. 2018) ...................................................................7

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011).................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................5

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .............................................................................9

*Automated Transaction LLC v. N.Y. Cmty. Bank*,
  2013 WL 992423 (E.D.N.Y. Mar. 13, 2013) ......................................................11

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
  937 F. Supp. 2d 355 (E.D.N.Y. 2013) ................................................................22

*Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*,
  2021 WL 634717 (S.D.N.Y. Feb. 16, 2021).................................................11, 12

*Basso v. NYU*,
  2020 WL 7027589 (S.D.N.Y. Nov. 30, 2020)...............................................22, 23

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016)..................................................................18

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018).........................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................5, 6, 9

*Bermudez v. Colgate-Palmolive Co.*,
  667 F. Supp. 3d 24 (S.D.N.Y. 2023)..............................................................19, 20

iii

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)........................................................25

*Bernstein v. JPMorgan Chase Bank*, *N.A.*,
    775 F. Supp. 3d 701 (S.D.N.Y. 2025)......................................23, 24, 25

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021)......................................6

*Boswell v. 706 Condo.*,
    2023 WL 3738426 (Sup. Ct. N.Y. Cnty. May 31, 2023)......................12

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)......................................15, 16

*Brown v. Kellogg Sales Co.*,
    2022 WL 992627 (S.D.N.Y. Mar. 31, 2022)......................................7

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)......................................7

*Carver v. City of New York*,
    621 F.3d 221 (2d Cir. 2010)......................................6

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob., Inc.*,
    602 F. Supp. 3d 663 (S.D.N.Y. 2022)......................................17

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
    92 F.4th 381 (2d Cir. 2024)......................................9

*Collazo v. Neth. Prop. Assets LLC*,
    35 N.Y.3d 987 (2020)......................................15

*Collins v. Pearson Educ., Inc.*,
    721 F. Supp. 3d 274 (S.D.N.Y. 2024)......................................6

*Corlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*,
    790 F.3d 411 (2d Cir. 2015)......................................7

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012)......................................18

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
    2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023)......................................6, 7, 8

*Deleon v. 560-568 Audubon Realty, LLC*,
    2023 WL 8319457 (Sup. Ct. N.Y. Cnty. Dec. 1, 2023)......................................12

*Electra v. 59 Murray Enters.*,
  987 F.3d 233 (2d Cir. 2021)................................................................................12

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
  754 F.3d 136 (2d Cir. 2014)................................................................................12

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2003)..................................................................................17

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
  304 F. Supp. 3d 392 (S.D.N.Y. 2018)..................................................................22

*JTRE Manhattan Ave. LLC v. Cap. One, N.A.*,
  585 F. Supp. 3d 474 (S.D.N.Y. 2022)............................................21, 23, 24, 25

*Kearns v. Cuomo*,
  981 F. 3d 200 (2d Cir. 2020)..................................................................................6

*Kommer v. Bayer Consumer Health*,
  710 F. App'x 43 (2d Cir. 2018) .....................................................................25, 26

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)..................................................................................5

*Maddox v. Bank of N.Y. Mellon Trust Co.*,
  19 F.4th 58 (2d Cir. 2021) ....................................................................................6

*Mahoney v. Endo Health Sols., Inc.*,
  2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ..................................................18, 19

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)..............................................................................6, 7

*Manhattan Motorcars, Inc. v. Automobili Lamborghini S.p.A*,
  244 F.R.D. 204 (S.D.N.Y. 2007) ..........................................................................22

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
  386 F.3d 107 (2d Cir. 2004)..................................................................................7

*NebraskaLand, Inc. v. Sunoco, Inc.*,
  2011 WL 6131313 (E.D.N.Y. Jul. 13, 2011); R. & R. *adopted* 2011 WL
  6131298 (E.D.N.Y. Dec. 8, 2011) ........................................................................22

*Negrete v. Citibank, N.A.*,
  187 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) .......................17

*Nezry v Haven Ave. Owner LLC*,
  2010 28 Misc.3d 1226(A), 2010 N.Y. Slip Op. 51506(U) (Sup. Ct. N.Y. Cnty.
  2010) ............................................................................................................12, 19

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ..........................................................................25

*Perks v. TD Bank, N.A.*,
  444 F. Supp. 3d 635 (S.D.N.Y. 2020) .......................................................15, 16

*Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*,
  554 F. Supp. 3d 568 (S.D.N.Y. 2021) ............................................................21

*Rank Grp. Ltd. v. Alcoa., Inc.*,
  2018 WL 1388516 (S.D.N.Y. Mar. 19, 2018) ................................................17

*Rinaldi v. SCA La Goutte, D'Or*,
  2020 WL 5441290 (S.D.N.Y. Sept. 9, 2020) .................................................19

*Rubino v. HSBC Bank, USA, N.A.*,
  238 N.Y.S. 3d 376 (Sup. Ct. N.Y. Cnty. 2025) .............................................15

*Sarr v. BEF Foods, Inc.*,
  2020 WL 729883 (E.D.N.Y. Feb 13, 2020) ....................................................23

*Schlessinger v. Valspar Corp.*,
  21 N.Y.3d 166 (2013) .....................................................................................11

*Seidler v. JP Morgan Chase Bank, N.A.*,
  2024 WL 344551 (S.D.N.Y. Jan. 12, 2024), *R. & R. adopted*, 2024 WL
  343299 (S.D.N.Y. Jan. 30, 2024) .........................................................12, 13, 14

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
  366 F. Supp. 3d 516 (S.D.N.Y. 2018) (Broderick, J.) ....................................10

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) ..........................................................................11, 15

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
  752 F.3d 239 (2d Cir. 2014) ..............................................................................8

*Tradeshift, Inc. v. Smucker Servs. Co.*,
  2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021) ................................................24

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ......................................................................................6

*Wedra v. Cree, Inc.*,
    2020 WL 1322887 (S.D.N.Y. Mar. 20, 2020) ........................................................19

*Zagoria v. NYU*,
    2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021) ........................................................18

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d (S.D.N.Y. 2016) ..............................................................................9

**Statutes**

N.Y. Gen. Bus. Law § 349 ................................................................................... *passim*

N.Y. Gen. Oblig. Law § 7-108 ............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................................2, 9, 11

Fed. R. Civ. P. 9(b) .......................................................................................................21

Fed. R. Civ. P. 12(b) ...............................................................................................5, 6, 7

## <u>INTRODUCTION</u>

The plaintiff, Elliott Werner, complains about a series of highly fact-specific circumstances that allegedly happened to him (and likely no one else) in a landlord-tenant dispute with his former landlord Equity Residential Management, LLC ("ERM"). There are no facts pled that anyone other than him had the same factual experience. Undeterred, and instead of pursuing his claims in housing court, the plaintiff seeks to morph his private landlord-tenant contractual dispute into a putative class action in federal court against three separate entities: ERM, Equity Residential ("EQR"), and ERP Operating Limited Partnership ("ERP") asserting six different causes of action, each on behalf of one or more of seven putative classes, four of them nationwide.

The predicate of the plaintiff's claims is that ERM has not returned his security deposit or paid him a concession that ERM promised him after a water leak incident. It did. ERM issued him a check for the remainder of his security deposit on March 4, 2025 and mailed it to him the next day—ten days after he moved out and within the 14-day statutory time period. ERM also issued him a check for the water-leak concession on March 18, 2025 and mailed it to him the following day. Both checks were sent to the forwarding address the plaintiff provided when he notified ERM of his intention to move out of the apartment. As such, if the plaintiff did not receive those checks, it is not because ERM failed to act, but rather because the plaintiff failed timely to provide an accurate forwarding address. After learning that the plaintiff did not, in fact, receive his checks, ERM sent replacement checks to his counsel. As a result, the plaintiff lacks standing to assert any claims premised on his allegation that he was injured by ERM's purported failure to timely return the balance of his security deposit or the flood concession. (*See* Section I.)

The plaintiff attempts to bring six different claims: violation of New York General Business Law ("GBL") Section 349; Violation of New York General Obligations Law ("GOL") Section 7-108; breach of contract including the covenant of good faith and fair dealing; unjust enrichment;

and negligent misrepresentation.  They all fail:

- The plaintiff improperly lumps together three separate and distinct legal entities without properly explaining which claims and allegations apply to which defendant in violation of Federal Rule of Civil Procedure 8 (*see* Section II);

- The GBL section 349 claim fails because the plaintiff fails to allege consumer-oriented or deceptive conduct (*see* Section III.A);

- The plaintiff's claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment each must be dismissed as duplicative of other claims (*see* Sections III.B and III.C);

- The negligent misrepresentation claim fails because (1) it is barred by the economic loss doctrine, and (2) the plaintiff has not alleged a misrepresentation or special relationship (*see* Section III.D); and

- The plaintiff lacks standing to seek injunctive relief (*see* Section I.E).

### FACTUAL BACKGROUND[1]

#### A.    EQR, ERM, and ERP.

Each of EQR, ERM, and ERP is a separate and distinct legal entity.  *See* Compl. ¶¶ 19-21.

The defendants and other related entities develop, own, and manage residential rental properties

throughout the United States, including in New York, California, Texas, Washington,

Massachusetts, Colorado, Texas, Georgia, Virginia, Maryland, and Washington D.C.[2]

ERM was the plaintiff's landlord and enters into lease agreements with tenants.  *See* Compl.

¶¶ 21, 25.  ERM's thousands of leases with tenants throughout the country are governed by

different laws depending on the state, and often the specific city, in which the building is located;

the plaintiff's lease is governed by New York law.  *See* Compl. ¶¶ 29-32, 45, 48, 83-97.

---

[1] For purposes of this motion, the defendants accept the plaintiff's allegations as true except to the extent they are contradicted by documentary evidence.  The defendants reserve the right to dispute the accuracy of any factual allegation if the case proceeds past this motion.  But the Court is not required to accept as true allegations that are contradicted by documents.  The Court may consider published websites.  *See*, *e.g.*, *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018).

[2] *See* https://www.equityapartments.com/#/markets.

2

### B.     The Named Plaintiff

1.     *The Plaintiff Signs a Lease, Provides a Security Deposit, and Moves Into the Parc Cameron.*

On November 24, 2023, the plaintiff signed a lease for an apartment at the Parc Cameron in New York City with a lease term through February 23, 2025.  Compl. ¶¶ 9-10, 33.  The plaintiff alleges that he paid a $1,000 security deposit to one of the defendants, although he does not specify which one.  *Id.* ¶¶ 11, 34.  On December 27, 2024, after more than a year of residing at the Parc Cameron, Mr. Werner provided notice of his intent to vacate his apartment on February 23, 2025.  *Id.* ¶ 36.  The Electronic Notice to Vacate form required the plaintiff to specify his forwarding address, and he provided his address at the Parc Cameron – 41 West 86th Street, #3G, New York, NY 10024.  *See* October 3, 2025 Declaration of Maribel Ortiz ("Ortiz Decl.") ¶¶ 9-10, Ex. 1.[3]  The plaintiff was sent automated e-mail reminders to update his forwarding address on January 26, 2025 and February 9, 2025.  *Id.* ¶ 11, Ex. 2.  Despite logging into his resident portal account at least eleven times between providing his notice to vacate and moving out, the plaintiff never updated his forwarding address.  *Id.* ¶ 12.

2.     *The Plaintiff Receives a Concession After a Water Leak Impacted His Apartment.*

In January 2025, a month before the plaintiff moved out, a pipe burst in the Parc Cameron, causing water to accumulate in his bathroom.  Compl. ¶ 12.  To reimburse him for the time his apartment was under remediation for the water leak, he alleges an employee at the Parc Cameron promised him a concession of $816.24.  *Id.* ¶¶ 11, 13, 53-54.

---

[3] As explained in Section I, this Court can consider the defendants' declarations on this factual challenge to Article III standing.

       3.      *The Plaintiff Vacates His Apartment, ERM Provides Him a Statement of Deposit Account, and Mails Him a Check for the Balance of His Security Deposit.*

A few weeks later, on February 23, 2025, Mr. Werner moved out of his apartment at the Parc Cameron as planned. Compl. ¶ 15. After he moved out, Parc Cameron staff inspected his apartment, and on March 1, 2025, a Statement of Deposit Account ("SODA"), which itemized certain charges he was being assessed, was made available to Mr. Werner through the Parc Cameron's online resident portal. Ortiz Decl. ¶¶ 4, 13, Ex. 3. The SODA calculated that the plaintiff would receive back $393.13 from his security deposit, based on the cleaning and painting charges, a fee for providing insufficient notice of his intent to vacate,[4] and certain other charges and credits remaining on his account. *Id.* ¶ 13, Ex. 3.

On March 4, 2025, ERM issued a check to the plaintiff for the $393.13 balance of his security deposit. October 3, 2025 Declaration of Pamela Ward ("Ward Decl.") ¶ 8, Exs. 1, 2. The following day, ERM mailed the check to the plaintiff at the address provided when he gave notice of his intent to move out. *Id.* ¶ 8. The plaintiff alleges he never received the check. Compl. ¶ 49. He also claims that the cleaning and painting fees he was charged were improper, in part because his apartment was professionally cleaned after the remediation efforts in January 2025. *Id.* ¶¶ 47-48.

       4.      *ERM Revises the Plaintiff's SODA and Mails Him a Check for the Concession.*

On March 14, 2025, ERM generated an updated SODA for the plaintiff, incorporating the $816.24 remediation concession. Ortiz Decl. ¶ 14, Ex. 4. The March 14 SODA was made

---

[4] The Complaint references the fee Mr. Werner was charged for providing insufficient notice, but it is not the premise for any of his causes of action. *See* Compl. ¶¶ 17, 41, 70-123. The defendants therefore understand the plaintiff is not challenging that fee.

available to the plaintiff through the Parc Cameron's resident portal.  Ortiz Decl. ¶ 14.

On March 19, 2025, ERM mailed the plaintiff a check for the $816.24 concession.  Ward Decl. ¶¶ 9-10, Exs. 3, 4.  The $816.24 remediation concession check was also sent to the forwarding address the plaintiff provided when he gave notice of his intent to move out.  *Id.* ¶ 10, Ex. 3.  The plaintiff alleges he has not received the $816.24 flood concession.  Compl. ¶¶ 55-56.

On April 1, 2025, the plaintiff logged into his resident portal account for the first time after moving out.  Ortiz Decl. ¶ 15.  Both the March 1 SODA and the March 14 SODA were available for him to review at that time.  *Id.*

5.    *ERM Reissues the Checks to the Plaintiff.*

Given the plaintiff's allegations that he never received the checks, on September 25, 2025, ERM reissued the checks for both the $393.13 balance of his security deposit and the $816.24 flood concession.  *See* Ward Decl. ¶ 10.  On October 1, 2025, those checks were mailed to Mr. Werner's counsel by overnight mail.  October 3, 2025 Declaration of Keara M. Gordon ("Gordon Decl.") ¶ 3, Ex. 1.  They should now be in his or his counsels' possession.

## LEGAL STANDARDS

1.    *Rule 12(b)(6) Dismissal for Failure to State a Claim.*

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  Courts require more than just "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  "Pleadings that offer only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024) (quoting *Twombly*, 550 U.S. at 555).

### 2.    *Rule 12(b)(1) Dismissal for Lack of Standing.*

 "A case is properly dismissed for lack of subject-matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[S]tanding is the threshold question in every federal case, determining the power of the court to entertain the suit." *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2023 WL 5935694, at *3 (S.D.N.Y. Sept. 12, 2023) (alteration in original) (citation omitted) (dismissing claims) (internal citations omitted). "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Id.* (citation omitted). Courts lack jurisdiction when the plaintiff does not have Article III standing. *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021) (finding no standing).

## **ARGUMENT**

## I.    **THE PLAINTIFF LACKS STANDING TO PURSUE CERTAIN CLAIMS.**

"No concrete harm; no standing." *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (affirming dismissal for lack of standing)). Standing is a jurisdictional question, "determining the power of the court to entertain the suit." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010). Accordingly, a "plaintiff must demonstrate standing for each and every claim and form of relief sought." *Id.* (citation omitted). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Kearns v. Cuomo*, 981 F. 3d 200, 207 (2d Cir. 2020) (citation omitted) (affirming finding of no standing).

The plaintiff bears the burden to establish standing. *Makarova*, 201 F.3d at 113. "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *see also Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) (dismissing claims; the defendant may proffer evidence beyond the pleadings to "reveal the existence of factual problems" (citation omitted)).

"Courts 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but the [c]ourt may not rely on conclusory or hearsay statements contained in the affidavits.'" *Brown v. Kellogg Sales Co.*, 2022 WL 992627, at *2 (S.D.N.Y. Mar. 31, 2022) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)). If the defendant's evidence "'reveal[s] the existence of factual problems' in the assertion of jurisdiction[,]"the burden shifts and the plaintiff must "come forward with evidence of their own to controvert that presented by the defendant." *Carter*, 822 F.3d at 57 (citation omitted).

A court "should not merely rely on the allegations of the [c]omplaint or draw inferences from it that are favorable to [p]laintiffs" but should "consider the evidence presented by the parties on the issue of standing, to determine whether that evidence is sufficient to satisfy [p]laintiffs' burden of proof." *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 WL 851918, at *6 (S.D.N.Y. Mar. 28, 2008). "The plaintiff, as the party asserting jurisdiction, must prove by a preponderance of the evidence that jurisdiction exists." *Dakus*, 2023 WL 5935694, at *3 (alterations and citation omitted). If they cannot, the case should be dismissed. *See Corlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015).

In *Dakus*, the plaintiff alleged that the defendant airline made certain statements about its sustainability initiatives which she relied on in purchasing a ticket. 2023 WL 5935694, at *1. The

airline moved to dismiss for lack of standing and "submitted materials demonstrating that Plaintiff used a third-party travel booking service, did not herself choose [defendant] as her airline when she purchased the flight, and thus could not have relied upon any of [its] representations." *Id.* In response, the plaintiff "did not present any evidence of her own to refute—or even deny— Defendant's allegations undermining her theory of injury," instead arguing that "any weighing of evidence is inappropriate on a motion to dismiss." *Id.* at *5. The court found that argument "unavailing" as "[i]t is well-established that, on a 12(b)(1) factual challenge, the court may 'decide issues of fact by reference to evidence outside the pleadings.'" *Id.* (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). Given the actual facts, the court dismissed the case for lack of standing. *Id.* at *5, *6.

The same analysis controls here. The defendants' factual challenge demonstrates that the plaintiff did not suffer an injury traceable to the defendants' conduct with respect to: (1) the timeliness of his itemized SODA statement; (2) the timeliness of the return of his security deposit; or (3) the remediation concession. First, with regard to the timeliness of his itemized statement, ERM made his SODA available to him through the online resident portal on March 1, 2025—six days after he moved out on February 23, 2025 and eight days before the statutory deadline. Ortiz Decl. at ¶ 13, Ex. 3. Second, with regard to the return of the plaintiff's security deposit, despite his allegations to the contrary, ERM did in fact mail it to him within the 14-day statutory deadline. Ward Decl. at ¶¶ 7-8, Exs. 1, 2. ERM issued him a check for the balance of his security deposit on March 4, 2025—nine days after he moved out—and mailed the check to him the following day (ten days after he moved out). *Id.* Both the SODA and check for the balance of his security deposit were thus sent to the plaintiff within the 14-day statutory period under GOL § 7-108. *See id.* Third, as to the remediation concession, ERM issued him a check for the full amount on March

18, 2025, and thus it was not "nonredeemable"; the money was, in fact, sent to him. *See id.* at ¶¶ 9-10, Exs. 3, 4.

ERM mailed both checks to the forwarding address the plaintiff provided when he gave notice of his intent to vacate, which was his address at the Parc Cameron. *Id.* at ¶¶ 8, 10, Exs. 1, 3. To the extent Mr. Werner claims he was injured because he did not receive the checks because he no longer lived there, any such injury is the result of his own failure to timely provide an accurate forwarding address, and any such injury is not fairly traceable to the defendants' conduct. Thus, the plaintiff lacks standing to pursue his claims to the extent predicated on any injury he claims to have suffered as a result of the defendants' alleged failure to provide the itemized statement or the balance of his security deposit timely or to pay him the flood concession.

## II.     THE COMPLAINT RELIES ON AN IMPERMISSIBLE GROUP PLEADING AND THEREFORE MUST BE DISMISSED IN ITS ENTIRETY.

The Complaint should be dismissed in its entirety because the plaintiff relies on improper group pleading. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) "entitle[s]" each defendant "to notice of the claims brought against him." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d, 337, 383-84 (S.D.N.Y. 2016) (dismissing claims). To state a claim that satisfies Rule 8 and *Twombly*, a plaintiff "must be able to separately state a claim against each and every defendant" in the action. *Id.* at 384. Where, as here, a complaint "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct," it must be dismissed. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal).

Courts regularly dismiss cases where a plaintiff relies on "group pleading" that fails to give each defendant notice of it challenged conduct. *In re Zinc*, 155 F. Supp. 3d at 384 (dismissing claims that relied on "[m]ere generalizations" directed at defendants collectively); *see also City of*

*Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 410 (2d Cir. 2024) (affirming dismissal of claims that impermissibly "bundle[d] together" defendants); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 559 (S.D.N.Y. 2018) (Broderick, J.) (dismissing claims against co-defendant that "consist[ed] solely of the generic group allegations that courts routinely dismiss"). Courts do so even where "allegations are made against families of affiliated entities." *Id.* at 559.

Here, the plaintiff makes vague and conclusory allegations that all three entities are "the owners and/or managers" of the Parc Cameron building, apparently based on information available on the website StreetEasy. *See* Compl. ¶¶ 22-24. StreetEasy, is not, however, any of the defendants' website, but is, according to StreetEasy, "a brand of Zillow, Inc. and registered trademark of MFTB Hold Co Inc." Streat Easy, https://streeteasy.com/. Based solely on this website, the plaintiff improperly collapses the defendants, lumping them together throughout the complaint, alleging that all three entities undertook apparently all of the acts described in the complaint. *See generally* Compl.

The plaintiff lumps the defendants together even where the claims apply to one defendant.[5] For example, as the plaintiff himself recognizes, GOL § 7-108 applies only to the landlord of the subject premises. *Id.* ¶ 31 ("[7]-108 . . . set forth new procedures that ***landlords*** of non-rent stabilized apartments must comply with in handling tenants' security deposits." (emphasis added)). Yet the plaintiff alleges that all three entities violated the statute. *See id* ¶¶ 83-97. Similarly, the plaintiff alleges breach of contract claims against all defendants, but he acknowledges that only ERM signed the lease. *Compare id.* ¶ 25, *with id.* ¶¶ 98-107. As to the other claims, the plaintiff

---

[5] Conversely, at times the plaintiff makes allegations against a singular defendant but fails to define which defendant those claims are being asserted against. *See, e.g.*, Compl. ¶¶ 33, 51, 65.

alleges generally that all the defendants were involved.  In short, as constructed, the Complaint does not "give each [of the EQR Entities] fair notice of the claims against it" as Rule 8(a) requires. *Automated Transaction LLC v. N.Y. Cmty. Bank*, 2013 WL 992423, at \*4 (E.D.N.Y. Mar. 13, 2013) (citation omitted).

## III.    SEVERAL OF THE CLAIMS ALSO FAIL AS A MATTER OF LAW.

Even if the defendants could discern which claims and allegations apply to which defendant, several of the plaintiff's claims fail as a matter of law: (1) the GBL section 349 claim fails to allege consumer-oriented conduct or deceptive conduct; (2) the breach of the covenant of good faith and fair dealing and unjust enrichment claims fail because they are duplicative of other causes of action; (3) the negligent misrepresentation claim is barred by the economic loss rule and because the plaintiff fails to allege a special relationship; and (4) the injunctive relief claim fails because the plaintiff has not alleged a risk of future injury sufficient to confer standing.

### A.    The N.Y. GBL Section 349 Claim Must Be Dismissed.

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" within New York State.  N.Y. Gen. Bus. L. § 349(a).  "To state a § 349 claim, a plaintiff must allege that '(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material way; and (3) the plaintiff was injured as a result.'"  *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, 2021 WL 634717, at \*11 (S.D.N.Y. Feb. 16, 2021) (Broderick, J.) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)) (dismissing claim).  Plaintiff's GBL section 349 claim must be dismissed because: (1) there is no consumer-oriented conduct; and (2) there is no deceptive conduct.

#### 1.    *The Plaintiff Fails to Allege Consumer-Oriented Conduct.*

GBL section 349 "does not grant a private remedy for every [allegedly] improper or illegal business practice." *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 172 (2013).  Instead, under its

first prong, a plaintiff must plead "that the acts or practices have a broader impact on consumers at large." *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) (affirming dismissal). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."[6] *Id.*; *Seidler v. JP Morgan Chase Bank, N.A.*, 2024 WL 344551, at *4, *5 (S.D.N.Y. Jan. 12, 2024) (dismissing GBL section 349 claims where premised on facts particular to the "Plaintiffs' own accounts"), *R. & R. adopted*, 2024 WL 343299 (S.D.N.Y. Jan. 30, 2024); *accord Bao Guo Zhang*, 2021 WL 634717, at *12 (dismissing GBL section 349 claim where the complaint "contain[ed] no allegations that Defendants participated in 'consumer-oriented conduct'").

This includes landlord-tenant lease disputes, as "[i]t is well established that GBL § 349 is not applicable to allegations of deceptive acts and practices alleged by tenants against landlords." *Boswell v. 706 Condo.*, 2023 WL 3738426, at *5 (Sup. Ct. N.Y. Cnty. May 31, 2023) (dismissing GBL section 349 claim); *see also Nezry v Haven Ave. Owner LLC*, 2010 28 Misc.3d 1226(A), 2010 N.Y. Slip Op. 51506(U), *2 (Sup. Ct. N.Y. Cnty. 2010) ("[GBL section] 349 does not apply to private landlord-tenant disputes[.]"); *Deleon v. 560-568 Audubon Realty, LLC*, 2023 WL 8319457, at *2 (Sup. Ct. N.Y. Cnty. Dec. 1, 2023) ("[T]he plaintiffs present only private disputes between landlords and tenants rather than consumer-oriented conduct aimed at the public at large, as required to state a GBL 349 claim") (collecting cases); *Aguaiza v. Vantage Props.*, 2009 WL 1511791, at *6 (Sup. Ct. N.Y. Cnty. May 21, 2009) ("[A] residential lease together with the

---

[6] The plaintiff's claims relating to alleged "account credits which could not be redeemed for cash" are also not consumer oriented. Compl. ¶ 75. These claims are premised on a private exchange between the plaintiff and a property management professional who "promised to him" the amount at issue based on a flood in his apartment. *Id.* ¶ 13. This is the opposite of consumer-oriented conduct. *See Electra v. 59 Murray Enters.*, 987 F.3d 233, 259 (2d Cir. 2021) (affirming district court's finding that private dispute over a private injury was not "consumer-oriented").

statutory protections . . . which protect[] that tenant . . . cannot be deemed a consumer transaction contract implicating GBL [section] 349."), *aff'd*, 69 A.D.3d 422 (1st Dep't 2010).

In *Aguaiza*, for example, a group of ten plaintiff-tenants from five separate buildings sued a defendant-landlord under GBL section 349 alleging the defendant schemed to displace tenants and maximize profits. 2009 WL 1511791, at *2. The court dismissed the plaintiffs' GBL section 349 claims, because, "[c]ontrary to Plaintiffs' desire to repackage themselves as consumers, it is inescapable that the relationship between Plaintiffs and Defendants is that of landlord and tenant, respectively" and "the overarching disputes between the parties flow from Plaintiffs' contractual obligations under their leases with Defendants" and "a statutory requirement"[7] applicable to tenants. *Id.* at *5-8. In finding the landlord-tenant dispute was not "consumer oriented" conduct as required by GBL section 349, the court found that the conduct at issue were "private disputes unique to Plaintiffs as individual rent stabilized tenants and their respective landlord and did not affect consumers at large." *Id.* at *7. Accordingly, the court dismissed the GBL section 349 claims. *Id.* at *8.

In *Seidler*, the plaintiffs were the victims of a scam, and sued Chase under GBL section 349, among other claims. 2024 WL 344551, at *1. The court found that "the amended complaint does not plausibly allege the existence of consumer-oriented conduct by Chase, as required under GBL § 349." *Id.* at *5. There, the plaintiff alleged that Chase did not refund her money fraudulently wired from her account, recounted several interactions between herself and Chase, and alleged that Chase had a "policy and practice" of similar behavior and "routinely" made false statements to customers. *Id.* at *5. The court found that, "Plaintiffs have not provided any factual allegations to plausibly suggest the existence of a policy and practice by Chase of 'routinely'

denying claims of fraud, or a policy or practice of permitting fraudulent wire transfers from customer accounts. Instead, the factual allegations here are specific to Plaintiffs' bank accounts and unique to Plaintiffs themselves." *Id.* Thus, the court found "Plaintiffs allegations do not plausibly suggest consumer-oriented conduct" and it dismissed the claim. *Id.* at *5, *7.

The same result follows here. First, the plaintiff's GBL section 349 claims are premised upon his leases and the particular factual circumstances of his landlord/tenant relationship with ERM. *See*, *e.g.*, Compl. ¶ 75 ("[D]efendants committed unfair or deceptive acts and practices by failing to return Plaintiff's and New York Class members' security deposits . . . charging Plaintiff and Subclass members for cost[s] related to ordinary wear and tear of occupancy, and by refunding Plaintiff and Subclass members in the form of account credits which could not be redeemed for cash."); *id.* ¶ 80 ("Defendant['s] conduct violated the express representations made in Plaintiff and New York Class members' leases."); *see also id.* at 76-79, 81-82.

Moreover, the plaintiff relies on GOL section 7-108 to attempt to create deceptive behavior, which, like the rent stabilization code relied on by the plaintiff in *Aguaiza*, applies to tenants, not consumers generally. *See generally* GOL § 7-108(e) ("Within fourteen days after the ***tenant*** has vacated the premises, the landlord shall provide the ***tenant*** with an itemized statement . . . and shall return any remaining portion of the deposit to the ***tenant***." (emphasis added)); GOL § 7-108(b) ("The entire amount of the deposit or advance shall be refundable to the ***tenant*** upon the ***tenant's*** vacating of the premises except for an amount lawfully retained for the reasonable and itemized costs due to . . . damage caused by the ***tenant*** beyond normal wear and tear[.]" (emphasis added)).

Second, the plaintiff fails to explain how any of the defendants' alleged conduct affects anyone other than him, much less the public at large. Indeed, the allegations in that regard here are even more anemic than in *Seidel*. Here, the plaintiff merely conclusorily asserts that

14

"Defendants' conduct is consumer oriented because it targets tenants and prospective tenants." Compl. ¶ 78. The language the plaintiff claims "targets" current and prospective tenants is contained within private leases, not any of the defendants' advertising or marketing materials. *Id.* ¶¶ 76-78. And there are no facts alleged to demonstrate that anyone other than the plaintiff has had an issue, for example, with obtaining the return of a remediation concession. As a result, the plaintiff's GBL section 349 claims should be dismissed.

2. <em>The Plaintiff Fails to Allege Deceptive Conduct.</em>

Even if the plaintiff's claim fell within the ambit of GBL section 349, which it does not, the claim should still be dismissed because the plaintiff fails to allege any "act or practice [that] was misleading in a material respect." *Spagnola*, 574 F.3d at 74. To allege such conduct, a plaintiff must allege a misleading act or practice "separate and apart from [his] allegations that [the defendant] breached" an underlying contract or violated another statute. *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641-42 (S.D.N.Y. 2020) (dismissing GBL section 349 claim as duplicative of contract claim); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (affirming dismissal of GBL section 349 claim premised on purported violation of another statute); *Collazo v. Neth. Prop. Assets LLC*, 35 N.Y.3d 987, 990-91 (2020) (affirming dismissal of section 349 claim; alleged "fail[ure] to admit that [defendants] violated the Rent Stabilization Law" was insufficient to allege deceptive conduct); *Rubino v. HSBC Bank, USA, N.A.*, 238 N.Y.S. 3d 376, 389-90 (Sup. Ct. N.Y. Cnty. 2025) (dismissing section 349 claim; allegations that "defendants failed to satisfy their contractual duties" were "insufficient to establish a claim of misrepresentation.").

In *Broder*, for example, the Second Circuit affirmed dismissal of a GBL section 349 claim where the plaintiff alleged that the defendants' "conduct in failing to provide plaintiff and the Class [] with the notice of the Winter Season rates as required under [another statute] *constitute[d]* materially deceptive acts or practices' actionable under GBL § 349." 418 F.3d at 199-200. The

15

court found that absent a "free-standing claim of deceptiveness under GBL § 349 that happen[ed] to overlap with a possible claim under" the other statute, the plaintiff failed adequately to allege deceptive conduct.  *Id.* at 200.

In *Perks*, the plaintiff alleged that the defendant bank improperly charged customers for insufficient funds in violation of the applicable contract.  444 F. Supp. 3d at 638.  The court dismissed the plaintiffs' GBL section 349 claim, finding that the plaintiffs did "not [plead] an act or practice that was misleading in a material respect separate and apart from the . . . allegations that [the defendant] breached the agreement," which "alone [wa]s sufficient grounds for dismissal."  *Id.* at 642.  In so doing, the court noted that while the plaintiff's allegations "tersely allude[d] to deceptive 'advertising' . . . that allegation is conclusory and appears to be no more than publicizing the terms of the allegedly breached contract without any sort of gloss, let alone with misleading representations of the terms of that contract."  *Id.*

This precedent mandates dismissal here.  Here too, the plaintiff has not alleged any deceptive conduct independent of his allegations that the defendants purportedly "violated the express representations . . . in leases" (Compl. ¶ 80) and "fail[ed] to comport with" GOL section 7-108 (*id.* ¶ 81).  Indeed, the plaintiff alleges only that "[a]fter entering into [a] lease," he was "deceived" because there were alleged statutory or lease violations.  *Id.* ¶ 77. Such allegations are insufficient to allege actionable deception.  As a result, the GBL section 349 claim must be dismissed.

## B.    The Covenant of Good Faith and Fair Dealing Claim Must Be Dismissed as Duplicative.

The plaintiff's claim for violation of the covenant of good faith and fair dealing is entirely duplicative of his breach of contract claim and thus should be dismissed.  New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair

dealing when a breach of contract claim, based on the same facts, is also pled." *Rank Grp. Ltd. v. Alcoa., Inc.*, 2018 WL 1388516, *27 (S.D.N.Y. Mar. 19, 2018) (Broderick, J.) (quotation omitted) (dismissing breach of implied covenant of good faith and fair dealing claim) (quoting *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2003); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016) (dismissing breach of the implied covenant of good faith and fair dealing claim because it "relie[d] on no facts distinct from the breach of contract claims."), *aff'd*, 759 F. App'x 42 (2d Cir. 2019). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob., Inc.*, 602 F. Supp. 3d 663, 678 (S.D.N.Y. 2022) (citation omitted).

In *Catalyst Advisors*, for example, the plaintiff's "claim for breach of the implied covenant of good faith and fair dealing relie[d] on the same allegations of breach as its claim for breach of contract" and the plaintiff "d[id] not specify any additional facts to support its claim for breach of the implied covenant of good faith and fair dealing, mounting only the generalized allegation that 'by the conduct alleged above, [Defendants] have materially breached . . . their duty of good faith and fair dealing.'" *Id.* at 678-79 (alteration in original) (citation omitted). The court therefore dismissed the claim for breach of the implied covenant of good faith and fair dealing as duplicative of the breach of contract claim. *Id.*

So too here. Here, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing arises from the same allegations as his breach of contract claim. Indeed, the plaintiff does not even allege them as separate counts—instead asserting a singular cause of action for "[b]reach of [c]ontract [i]ncluding the [c]ovenant of [g]ood [f]aith and [f]air [d]ealing." *See* Compl. ¶¶ 98-107. Both claims are based on the same underlying facts and alleged conduct:

| Breach of Contract | Breach of the Covenant of Good Faith and Fair Dealing |
|---|---|
| "Defendants breached promises made to Plaintiff and all members of the proposed classes . . . when Defendants charged tenants for cost[s] relating to ordinary wear and tear[.]" Compl. ¶ 102. | "Defendants acted in bad faith by choosing to charge tenants for costs related to ordinary wear and tear despite representing that they would not be responsible for such cost[s.]" Compl. ¶ 105. |
| "Defendants breached promises made to Plaintiff and all members of the proposed classes . . . when Defendants . . . unlawfully retained tenants' security deposits[.]" Compl. ¶ 102. | "Defendants acted in bad faith . . . by withholding tenants' security deposits despite representing that they would have their deposits returned to them[.]" Compl. ¶ 105. |
| "Defendants breached promises made to Plaintiff and all members of the proposed classes . . . when Defendants . . . issued nonredeemable credit[.]" Compl. ¶ 102. | "Defendants acted in bad faith . . . by issuing compensatory payments in the form of nonredeemable account credit" and by "assuring Plaintiff and Credit Class members that they would be compensated for the uninhabitable conditions of their units, when in reality Defendants had no intention of doing so." Compl. ¶¶ 105-06. |

Accordingly, the plaintiff's breach of the implied covenant of good faith and fair dealing claim must be dismissed as duplicative.

### C.    The Unjust Enrichment Claims Must Be Dismissed.

The plaintiff's unjust enrichment claim is likewise subject to dismissal as duplicative of his breach of contract claim and other statutory claims. It is well established that an "'unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).

"New York law does not permit recovery on a quasi-contract claim such as unjust enrichment" where a valid and enforceable contract "governs the same subject matter as the" unjust enrichment claim. *Zagoria v. NYU*, 2021 WL 1026511, at *5 (S.D.N.Y. Mar. 17, 2021) (dismissing as duplicative the plaintiff's unjust enrichment claims because they were premised on "the same factual allegations underpinning [the plaintiff's] claim for breach of contract"); *Bautista v.*

18

*CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) (dismissing claims).  Indeed, "'where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claims is covered by the contract,' a court must dismiss the unjust enrichment claim." *Rinaldi v. SCA La Goutte, D'Or*, 2020 WL 5441290, at *1, *7 (S.D.N.Y. Sept. 9, 2020) (Broderick, J.) (citations omitted) (dismissing claim); *see also Nezry,* 2010 WL 3338545, at *11.

In *Nezry*, a group of tenants brought breach of contract and unjust enrichment claims, among others, against the defendants for overcharging rent pursuant to the leases between the parties.  2010 WL 3338545, at *1.  The defendants moved to dismiss the unjust enrichment claims on the grounds that the plaintiffs asserted "precisely the same allegations in support of their" unjust enrichment claims as their contract claims.  *Id.* at *7.  The court agreed, dismissing the unjust enrichment claims because "where a written contract, such as plaintiffs' leases, governs the dispute, *quasi contract* claims such as unjust enrichment are barred."  *Id.* at *11.

Similarly, unjust enrichment claims that are duplicative of tort claims premised on statutory violations are also routinely dismissed.  *See Wedra v. Cree, Inc.*, 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing unjust enrichment claim that was "duplicative of [the] plaintiff's other claims for material misrepresentations rooted in statutory, contract, and tort law"); *Mahoney*, 2016 WL 3951185, at *11 (dismissing unjust enrichment claim that "overlap[ped] with [the plaintiff's] fraud, fraudulent concealment, express warranty, and [GBL] § 349 claims); *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44-46 (S.D.N.Y. 2023).

In *Bermudez*, the court dismissed the plaintiff's unjust enrichment claims as duplicative because "the unjust enrichment claim [was] based on similar allegations as . . . state statutory claims, such as Plaintiffs' GBL Section 349 claim."  667 F. Supp. 3d at 44-45.  Although the plaintiffs tried to argue it was "brought as an 'alternative theory,'" the court rejected that argument

because "courts "regularly dismiss unjust enrichment claims brought as an alternative theory when the claims rely on a similar set of facts as the plaintiff's other claims." *Id.* at 45-46.

The same rationale applies here, as the plaintiff's unjust enrichment claims contain the same allegations and rely on the same set of facts as both the breach of contract claims and the statutory violations the plaintiff attempts to plead under other causes of action in the Complaint.

| Unjust Enrichment Allegations | Breach of Contract Allegations |
|---|---|
| "Plaintiff and Class members conferred benefits on Defendants when Defendants retained Plaintiff's and Class members' security deposits and . . . charged them fees for costs relat[ed] to ordinary wear and tear[.]" Compl. ¶ 110. | "Defendants breached promises made to Plaintiff and all members of the proposed Classes, as described herein, when Defendants charged tenants for cost[s] relating to ordinary wear and tear [and] unlawfully retained tenants' security deposits[.]" Compl. ¶ 102. |
| "Plaintiff and Class members conferred further benefit on Defendants when Defendants issued compensatory funds to Plaintiff and Credit Class members in the form of nonredeemable account credit." *Id.* ¶ 111. | "Defendants breached promises made to Plaintiff and all members of the proposed Classes, as described herein, when Defendants . . . issued nonredeemable credit." *Id.* ¶ 102. |
| **Unjust Enrichment Allegations** | **Statutory Violation Allegations** |
| "Plaintiff and class members conferred benefits on Defendants when Defendants retained Plaintiff's and Class members' security deposits and when Defendants charged them fees for costs relating to ordinary wear and tear of occupancy." Compl. ¶ 110.<br><br>"Retention of this money under these circumstances is unjust and inequitable because withholding tenants' security deposits for longer than 14 days, charging tenants for costs relating to ordinary wear and tear . . . is illegal and void under New York Law. Specifically, Defendants' actions are void according to N.Y. Gen. Bus. Law § 349 and N.Y. Gen. Oblig. Law § 7-108." *id.* ¶ 113 | "N.Y. Gen. Oblig. Law § 7-108(1-a)(b) states . . . [t]he landlord may not retain any amount of the deposit for costs relating to ordinary wear and tear[.]" Compl. ¶ 85.<br><br>"[T]he move out inspection conducted by Defendants revealed only superficial marks or dirtiness in certain areas.   The move-out inspection revealed no damage beyond ordinary wear and tear of occupancy. Defendants were thus not entitled to retain any portion of Plaintiff's security deposit for the cost of cleaning or painting the apartment after Plaintiff had moved out." *Id.* ¶¶ 88-89. |
| | "N.Y. Gen. Oblig. Law § 7-108(1-a)(e) states . . . 'within fourteen days after the tenant has vacated the premises, the landlord shall . . . return any remaining portion of the deposit to the tenant." Compl. ¶ 93.<br><br>"Plaintiff did not receive an itemized statement |

|  | indicating the basis for the retention of any portion of his security deposit within 14 days of Plaintiff moving out.  Further, when Defendants eventually uploaded a statement to an online tenant portal, Defendants failed to return any remaining portion of the deposit to Plaintiff within 14 days of vacating his unit." *Id.* ¶¶ 95-96. |
| --- | --- |

Accordingly, the plaintiff's unjust enrichment claims should be dismissed as duplicative.

### D.    The Negligent Misrepresentation Claim Must Be Dismissed.

Under New York law, to state a claim for negligent misrepresentation "a plaintiff must assert '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'"  *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 474, 478–79, 481 (S.D.N.Y. 2022) (citation omitted) (dismissing negligent misrepresentation claim).  Where, as here, the negligent misrepresentation claim "closely sounds in fraud," the pleading must meet the heightened standard under Rule 9(b).  *Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 599-600 (S.D.N.Y. 2021) (citation omitted) (dismissing negligent misrepresentation claim).  As previously discussed, there was no misrepresentation here, only alleged breaches of contract and supposed statutory violations. (Section III.A.2.)  The plaintiff's negligent misrepresentation claim is also subject to dismissal because: (1) it seeks purely economic losses covered by the plaintiff's contract claim; and (2) the plaintiff fails to allege a duty or special relationship.

#### 1.    *The Economic Loss Rule Bars the Negligent Misrepresentation Claim.*

The negligent misrepresentation claim should be dismissed under the economic loss

doctrine, which prohibits recovery for purely economic loss in tort where, as here, "an action in contract is available." *Manhattan Motorcars, Inc. v. Automobili Lamborghini S.p.A*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (dismissing negligent misrepresentation claim). "Under New York's economic loss doctrine, a party to a contract that suffers economic loss only (not personal injury) is, in most cases, limited to recovery pursuant to a claim for breach of contract and cannot recover economic or consequential damages in tort." *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 361, 364 (E.D.N.Y. 2013) (dismissing claims); *see also Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018) ("Because the [parties'] relationship . . . is governed by the contracts . . . the economic loss doctrine would generally bar Sawgrass's tort-based []claims.").

The economic loss rule is intended to "keep 'contract law from drowning in a sea of tort'" where an action based on the contract is available. *Manhattan Motorcars, Inc.*, 244 F.R.D. at 220 (citation modified). But the "Second Circuit has carved out an exception to the economic loss doctrine in [certain] cases," including in cases of "professional malpractice," and where the defendant has "a duty independent of contractual obligations or where [a] defendant's conduct causes damage to property not subject to the contract." *NebraskaLand, Inc. v. Sunoco, Inc.*, 2011 WL 6131313 at *4 (E.D.N.Y. Jul. 13, 2011) (citation omitted); R. & R. *adopted* 2011 WL 6131298 (E.D.N.Y. Dec. 8, 2011). "Even when the 'duty breached [] is independent of any contract between the parties,' the economic loss doctrine still may prevent otherwise viable tort claims without damages independent from the contract claim." *Basso v. NYU*, 2020 WL 7027589, at *12 (S.D.N.Y. Nov. 30, 2020) (quoting *Manhattan Motorcars*, 244 F.R.D. at 220).

In *Basso*, the plaintiffs brought negligent misrepresentation claims against a university based on "alleged misrepresentations" contained in the defendant's website, webpage, and

messages from administrators. *Id.* The court dismissed those claims, finding that the relationship between the students and university was contractual, and that the alleged misrepresentations were indistinguishable from the breach of contract claim. *See id.* The court further found dismissal appropriate because the plaintiffs "identifie[d] only economic harm . . . suffered from the alleged misrepresentations," and no "independent injury that [was] not otherwise remediable in contract." *Id.* at *13.

The same analysis requires dismissal here. The alleged damages are based on the contractual relationship between the parties: the return of his security deposit without the charges he claims related to ordinary wear and tear, and the credit he claims he was promised. Compl. ¶ 119. And, the plaintiff's claimed damages, like those in *Basso*, are purely economic. *See* Compl. ¶¶ 119-122 (seeking monetary "refund," "repayment," "compensat[ion]," and other forms of economic loss). Accordingly, the economic loss doctrine bars his negligent misrepresentation claim.

### 2.    *The Negligent Misrepresentation Claim Fails Because the Plaintiff Has Not Alleged a Duty or Special Relationship.*

The negligent misrepresentation claim fails because there is no special relationship between the plaintiff and any of the defendants. "New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the parties." *JTRE Manhattan*, 585 F. Supp. 3d at 479 (citation omitted). A special relationship does not exist where the defendant does not possess "unique or special expertise" and is not "in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *6, *6 n.2 (E.D.N.Y. Feb 13, 2020) (citation omitted) (dismissing negligent misrepresentation claim); *see also Bernstein v. JPMorgan Chase Bank*, *N.A.*, 775 F. Supp. 3d 701,

711 (S.D.N.Y. 2025).  This is particularly true where "[t]he parties had no relationship prior to" the transaction at issue.  *JTRE Manhattan*, 585 F. Supp. 3d at 480; *see also Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 779 (S.D.N.Y. 2011) (no special relationship where parties had no prior existing relationship).  The "Second Circuit has held that were the plaintiff has not pled a 'special relationship of trust or confidence,' and where 'the allegations with respect to . . . special expertise and superior knowledge are soft" such claims should be dismissed. *Amusement Indus.*, 786 F. Supp. 2d at 781-82 (citation omitted).

In *Bernstein*, the plaintiffs, an elderly couple, sued two banks after a personal assistant working for them fraudulently charged almost $3 million to their accounts.  *Bernstein*, 775 F. Supp. 3d at 706-07.  The plaintiffs brought negligent misrepresentation claims against both banks, alleging the banks had special expertise upon which the plaintiffs relied, and there was a special relationship because both banks had at times provided the plaintiffs with private bankers to assist them with their accounts.  *Id.* at 711.  The court dismissed the negligent misrepresentation claims, finding: (1) private bankers did not have "special expertise" as this only "arise[s] when a defendant misrepresents scientific or technical facts, such as a product's health benefits or maintenance requirements of airplanes" (*id.* (citation omitted)); and (2) there was no special relationship since the plaintiff alleged nothing "more than a typical bank-customer relationship" which does not give "rise to a heightened duty of care."  *Id.* at 711-12 (citation omitted).  The court stated that a "defendant's superior knowledge of the particulars of its own business practice is insufficient to establish a special relationship, and generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties."  *Id.* (quoting *Tradeshift, Inc. v. Smucker Servs. Co.*, 2021 WL 4463109, at *8 (S.D.N.Y. Sept. 29, 2021)).

Here, similarly, the plaintiff has not alleged "a special relationship of trust or confidence"

sufficient to establish a duty. *See JTRE*, 585 F. Supp. 3d at 481. He briefly alleges that a "special or privity-like relationship" existed because "Defendants are sophisticated and experienced real estate owners and/or managers who entered into a lease agreement with Plaintiff." Compl. ¶ 118. But these allegations mirror those dismissed frequently because "defendant's superior knowledge of the particulars of its own business practice is insufficient to establish a special relationship." *Bernstein,* 775 F. Supp. 3d at 711-12 (citation omitted). Moreover, the plaintiff does not allege that he had a relationship with ERM prior to signing the lease to support a finding of a special relationship. Instead, he simply declares that "Defendants thus had a duty to impart correct information to the plaintiff regarding Plaintiff's rights and obligations relating to the agreement." (Compl. ¶ 118), but provides no facts to support that legal conclusion. The negligent misrepresentation claim should be dismissed.

### E.    The Plaintiff Lacks Standing for His Injunctive Relief Claim.

Finally, the plaintiff's claim for injunctive relief must be dismissed because he has not alleged a threat of future injury. "'A plaintiff seeking to represent a class must personally have standing,' to pursue 'each form of relief sought." *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). A plaintiff does not have standing "to pursue injunctive relief if" he cannot "establish a 'real or immediate threat of injury.'" *Id.* (citation omitted). "Past injuries," moreover, "do not confer standing . . . unless the plaintiff can demonstrate that he is likely to be harmed again in the future in a similar way." *Id.* (citation modified) (quoting *Nicosia*, 834 F.3d at 238) (affirming dismissal of injunctive relief claims). And "[i]f the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (denying certification of injunctive relief claim

because consumers were "not bound to purchase a product again. . . once they bec[a]me aware of [the deception]"); *see also Kommer*, 710 F. App'x at 44 (affirming dismissal of injunctive relief claim because plaintiff lacked standing where he was "no longer likely to purchase" the product at issue).

Here, the plaintiff seeks "an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign." Compl. ¶ 124(g). But the plaintiff now clearly is aware of the allegedly deceptive conduct, so it is impossible for him to be misled in the future, and past harm does not confer standing. The plaintiff thus lacks standing to seek injunctive relief.

## CONCLUSION

The plaintiff seeks relief that was already provided to him, attempts to manufacture a nationwide class action from a factually intensive landlord-tenant dispute, lumps together indiscriminately defendants who are separate and distinct legal entities, and otherwise fails to state a cognizable claim. For the reasons set forth above, the defendants respectfully request that the Court dismiss the plaintiff's Complaint in its entirety.

Dated: October 3, 2025

Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/ Keara M. Gordon_
Keara M. Gordon
Rachael C. Kessler
Bradley Jennings
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
keara.gordon@us.dlapiper.com
rachael.kessler@us.dlapiper.com
bradley.jennings@us.dlapiper.com

*Attorneys for Defendants Equity Residential,*
*Equity Residential Operating Limited*
*Partnership, and Equity Residential*
*Management, LLC*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Local Rule 7.1(c), counsel for defendants Equity Residential, Equity Residential Operating Limited Partnership, and Equity Residential Management, LLC certifies that this memorandum of law complies with the word count limit as it contains 8,749 words.

*/s/ Keara M. Gordon*
Keara M. Gordon