**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOTT WERNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIVMARK RESIDENTIAL and VIVMARK RESIDENTIAL MANAGEMENT LLC,<br><br>Defendants. | Case No. 25-CV-6130 (VSB) (SLC)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Elliott Werner ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants Vivmark Residential, formerly known as Equity Residential ("ER") and Vivmark Residential Management LLC, formerly known as Equity Residential Management, LLC ("ERM") (collectively, "Defendants").[1]

## NATURE OF THE ACTION

1. This is a putative class action lawsuit by Plaintiff and other tenants who had their security deposits illegally retained by Defendants. For years, tenants have been complaining in various forums of Defendants' unlawful retention of tenant deposits for wear and tear damages. For example, the Better Business Bureau is flooded with complaints from former tenants for these uniform practices:

[1] *See* ECF. No. 43 (noting the name and caption change).

**Initial Complaint**

**Type:** $ Billing Issues

**Date:** 07/02/2026

**Status:** Answered

I am filing a complaint against Equity Residential (Prism at [redacted]) for unfair billing practices and wrongfully withholding $354.22 from my security deposit after my June 19, 2026 move-out (tenancy since 6/19/23).The Statement of Deposit ([redacted]) charges are directly contradicted by the Move-Out Inspection Report signed by their own inspector:Drywall Repair ($122.55): Charged despite every single "Walls" and "Ceiling" line item across the apartment being marked "OK" or "Good" with zero damage [redacted] ($40.85): Charged despite the inspector's summary explicitly stating, The unit was found to be in generally good condition with all areas clean, noting only "standard cleaning" was needed "for turnover."Painting ($190.82): Charged for routine painting that the report explicitly notes was required "for turnover."Under NY General Obligations Law [redacted], landlords cannot charge for routine turnover expenses, standard cleaning, or painting due to ordinary wear and tear. Charging for nonexistent drywall damage directly contradicts their own inspection and constitutes bad-faith withholding. Equity Residential appears to use automated turnover charges to wrongfully reduce tenant deposits.The business has a strict 14-day statutory window (ending July 3, 2026) to return the deposit or forfeit the right to retain any of it. They have already been issued a formal demand letter highlighting these contradictions.Additionally, because I lived in a separate unit within the building from [redacted], I requested the [redacted] and inspection report for that prior unit to reconcile a transferred security deposit amount and check for similar baseless charges. Management has completely ignored this request.

Image 1

**Initial Complaint**

**Type:** Product Issues

**Date:** 06/27/2026

**Status:** Answered

I am seeking reimbursement of $352.05 that Equity Residential ("EQR") wrongfully withheld from my security deposit after I vacated Apartment 11N at West 96th St ([redacted]) on 05/31/2026.EQR wrongfully deducted $125.25 for "cleaning" and $226.80 for "painting." After I disputed these charges, [redacted] refused to refund the money and instead offered explanations that are contradicted by its own inspection report. Before moving out I paid $379.98 for a professional move-out deep cleaning. Although [redacted] acknowledged this, it still charged me for additional cleaning without identifying what allegedly required cleaning or producing any documentation showing that additional cleaning was actually performed. Even more telling, [redacted]'s own inspection report states that only "Standard" unit cleaning was required.The painting charge is equally unsupported. The inspection report and photographs show only minor nail holes and wall marks consistent with normal wear and tear. After I challenged the deduction, [redacted] changed its explanation claiming there were "multiple large holes" requiring patching and painting. However, the inspection report never mentions "large holes," and the photographs simply do not support that claim. The report also contains a glaring inconsistency: while certain sections reference painting, the final "Turn Outcome" states "Paint: No Work Needed."While researching my options, I found another BBB complaint involving a different EQR property where a former tenant challenged nearly identical cleaning and painting deductions that [redacted] ultimately agreed to waive. This raises serious concerns that these charges reflect a broader practice rather than a legitimate assessment of apartment conditions.[redacted] has failed to provide evidence justifying these deductions and has offered explanations that are inconsistent with its own documentation. I respectfully request that [redacted] refund the $352.05 wrongfully withheld from my security deposit.

Image 2

**Initial Complaint**

**Type:** $ Billing Issues

**Date:** 06/29/2026

**Status:** Answered

I dispute a $341.95 move-out painting charge assessed by Equity Residential after I already paid the $250 Full Painting fee offered on the propertys Easy Move Cleaning form. Before moving out, I elected the Full Painting - $250 option (the only other option was Touch Up Paintng - $125), and paid that amount in full. Based on the plain language of the form, the Full Painting fee covered repainting the apartment. After move-out, I was billed an additional $349.95 for painting. When I questioned the charge, I received multiple, inconsistent explanations. I was initially told the charge was for extra paint required to cover different-colored walls. I was then told it was for additional labor and materials, then because the contractor had to apply primer throughout the apartment, and finally that the work exceeded the scope of a standard repaint. Despite these changing explanations, Equity has never identified any lease provision or language in the Easy Move Cleaning form stating that residents who purchase the Full Painting option remain responsible for additional painting-related charges when the vendor charges them more than $250. The forms additional-charge provision refers only to cleaning beyond the listed items and repairs to damaged items. It does not expressly authorize additional painting charges after purchasing the Full Painting option.Equity also provided a vendor invoice that does not support the amount charged. The invoice references a $450 color-change fee that they state was not passed through to me, yet the $349.95 charge does not appear as a line item. I requested an explanation of how the $349.95 was calculated but did not receive one.I requested corporate review and was directed to Resident Relations. I submitted a request but received no response.I am requesting that Equity Residential remove the unsupported $341.95 painting charge from my account.

Image 3

**Initial Complaint**

**Type:** Product Issues

**Date:** 03/19/2026

**Status:** Answered

Nature of Complaint:I am filing a formal complaint against Altitude Apartments (managed by Equity Residential) located at [redacted], regarding unlawful security deposit deductions for Unit 125. My tenancy was exactly two years (March 7, 2024 to March 9, 2026).The local management team unjustly deducted a total of $409.94 ($274.94 for painting and $135.00 for cleaning) from my security deposit, violating California Civil Code Section 1950.5.Failure to [redacted] Wear and Tear: We lived in the unit for two years. The move-out inspection only noted minor marks on the walls, strictly falling under "Normal Wear and Tear" under CA law. Management charged us 100% of the painting cost without applying any legal proration for the 2-year lifespan of the paint.Failure to Provide Lawful Receipts (CC 1950.5(g)(2)): For deductions over $125, landlords must provide actual third-party vendor invoices for both labor and materials. Management provided an internal "Move-Out Cost Worksheet" and explicitly admitted in an email that the vendor invoice "excludes material costs." Deducting money without actual material purchase receipts is illegal.Management has refused to correct these unlawful charges despite my formal dispute. I am requesting an immediate refund of $409.94.

Image 4

They also lied when they claimed the painting charge was for "damages beyond normal wear and tear." Their own June 15, 2026 move-out inspection, conducted in person with their maintenance staff and signed by both parties. Their own June 22, 2026 official inspection report explicitly states "Paint (Turn Outcome): No Work Needed." They then manufactured a contradictory "damage" narrative after the fact to justify charging me. They were caught in that lie too, and again they simply doubled down.

Image 5

2. Forums on Reddit and reviews on trustpilot.com have also reported the same:

**rr90013** • 4y ago

I lived in one of their buildings in California. It was fine besides they kept $500 of my security deposit for cleaning that was definitely just normal wear and tear.

1 Reply Award Share ···

**akayfourtyseven** • 2y ago

What did you do? I'm in a similar boat here

1 Reply Award Share ···

**[deleted]** • 1y ago

Yeah I had this happen

1 Reply Award Share ···

Image 6

**r/RealEstate** • 10y ago
Count_M

## Equity Residential - Small Claims Court - Security Deposit (California)

Curious if anyone has sued Equity Residential for the return of a security deposit in small claims court. They seem to make standard deductions for cleaning and painting without regard to the actual condition of the unit. This is in California.

7 · 9

Image 7

r/LosAngelesRealEstate • 3mo ago
breezyonjupiter

**Can my apartment complex charge me for paint and carpet replacement after two years? (California)**

I recently moved out of an Equity Residential apartment complex in LA after living there for two years, and I'm trying to figure out whether these move-out charges are reasonable or worth disputing.

The final statement includes:

- $244.15 for paint
- $571.46 for carpet replacement

My understanding was that repainting and carpet replacement are often considered normal turnover costs, especially after a tenant has lived in a unit for a couple of years. There wasn't any major damage to the walls or carpet beyond ordinary wear and tear from living there.

The charges seem excessive to me, but I'm not sure what California law says about this or whether Equity Residential has a basis for charging them.

Has anyone successfully challenged similar charges from Equity Residential or another large property management company? Are landlords allowed to charge for full carpet replacement and painting, or are they supposed to account for depreciation/useful life?

I'm planning to request documentation, photos and invoices if I haven't already received them, but I'd appreciate any advice on whether this sounds like something worth disputing.

Image 8

Kavon Ward
US • 2 reviews

Jul 20, 2023

**THEY WILL RIP YOU OFF!**

After living at Bell Fontaine for two years I can honestly say DO NOT RENT THERE or at any of Equity residential properties. They will rip you off and you'll see it in your move out charges. They charged me to replace carpet that was under warranty and didn't need to be replaced. They also charged me astronomical fees for cleaning and painting. There was no damage to anything in the unit, just simple wear and tear. Be prepared for them to raise your rent 10 percent every year and to retaliate against you for moving out by charging you unjust move out fees. You've been warned!

June 19, 2023 Unprompted review

Useful 1 Share

Image 9

CJ Capt. Jack
US • 4 reviews

Dec 3, 2019

**When you move out .watch it !! They try to not give you back full deposit**

When you move out .watch it !! You won't get your full deposit back they are untruthful and liars !!! they charge for painting and cleaning even though I had it cleaned before moved out . I asked to see pictures what they cleaned and they sent me other apartment pictures and said it's mine and was dirty !!
I have to bring them to small claims court to get my whole deposit back .. really unfair to waist my time .
So take pics when move out ! They lie .. and they were so nice on everything else what a disgusting shame they are worse than 1 star .would never recommend them anymore !

December 3, 2019 Unprompted review

Useful 2 Share

Image 10

TP A
US • 7 reviews

Aug 23, 2019

**Illegal business practices**

Do not rent from any apartments run and owned by Equity Residential. They bully tenants and engage in illegal practices. They refused to return our security deposit even if the place was in perfect condition when we left. They were charging us for cleaning and painting and for normal wear and tear which is completely illegal! They have been in lawsuit many times in the past and this is another class action lawsuit waiting to happen. I am trying to sue them. They bully you in the hopes that you give up. They also get you in with specials but once your yearly lease is over, they raise the rent by as much as 25%. PM me if anyone is interested to file a class action lawsuit.

August 23, 2019 Unprompted review

Useful 3 Share

Image 11

3. Plaintiff and the putative class members entered into rental lease agreements with Defendants under the understanding that the security deposits they gave to Defendants upon signing their leases would be returned to them, minus any legitimate charges. However, Defendants knowingly and deceptively withheld portions of Plaintiff's and Class members' deposits for costs related to ordinary wear and tear of occupancy and failed to provide them with itemized statements of deposit reflecting such charges as required by law and in violation of Plaintiff and Class Members leases.

4. In fact, Plaintiff, as well as other Class members, have still not received their entire security deposits back.

5. Defendants' deceptive handling of Plaintiff's and Class members' security deposits violates New York General Obligations Law § 7-108 (1-a)(b) and is a breach of contract.

## THE PARTIES

### A. Defendants Are Alter-Egos

1. Defendant ER is a real estate investment trust incorporated in Maryland with its principal place of business at Two North Riverside Plaza, Chicago, Illinois 60606. Equity Residential is "one of the largest and most established developers, owners, and managers of residential communities in NYC and the US."[2]

2. Defendant ERM is a Delaware limited liability company and shares its principal place of business with Defendant ER at Two North Riverside Plaza, Chicago, Illinois 60606.

3. Defendant ER controls Defendant ERM. In Defendant ER's latest 10-K filing with the SEC, it lists Defendant ERM as a subsidiary and explains: "Due to the Company's ability to control the Operating Partnership and **its subsidiaries**, the Operating Partnership and each such

[2] https://streeteasy.com/property_management_companies/120?site=nyc.

subsidiary entity has been consolidated with the Company for financial reporting purposes, except for any unconsolidated properties/entities."[3] The 10-K lists Defendant ERM as its subsidiary for this purpose.[4]

4. In a declaration submitted by the "Assistant Vice President, Assistant Controller for [Defendant] Equity Residential," Pamela Ward, she admits to Defendant ER's control over the conduct at issue in this case. She states that she is "familiar with the processes occurring after a tenant vacates an apartment in a building managed by Equity Residential Management LLC," and "as part of [her] duties, [she is] involved in the processes related to issuing of checks returning security deposits and other refund-related checks for tenants."[5]

5. She further states that "we," as in Defendant ER, "use an automated system to transmit amounts for security deposit returns and other refund-related amounts for residents after a resident vacates an apartment."[6]

6. Similarly, Maribel Ortiz, "Product Manager in Digital Marketing for [Defendant] Equity Residential," submitted a declaration stating her duties involved "communications, notifications, and documentation with tenants during the process of vacating an apartment."[7] She goes on to explain "we" as in Defendant ER, "utilize a resident portal system, wherein each individual tenants has their own portal that **we** and the tenant can use to provide communications and documentation related to rent, apartment renewal forms, lease updates, SODAs, and eNTVs, among other communications."[8]

---

[3] https://investors.equityapartments.com/filings/sec-filings/default.aspx
[4] *Id.*
[5] ECF No. 22, Declaration of Pamela Ward in Support of Defendants' Motion to Dismiss.
[6] *Id.*
[7] ECF No. 23, Declaration of Maribel Ortiz in Support of Defendants' Motion to Dismiss.
[8] *Id.* (emphasis added).

7. Plaintiff's lease was signed by Defendant ERM for the lessor "as agent for the owner." See **Exhibit A**, Plaintiff's Lease, at 2. The lease further states "[t]he party executing this Lease as the Lessor is Equity Residential Management L.L.C., which is acting as the managing agent for the owner of the Building." *Id*. at 3.

8. The signature for EQR found on page 2 of the Term Sheet for EQR is identical to the signature for the "certification by owner" pursuant to the House Maintenance Code. *Id*. at 15.

9. While the owner or principal is not explicitly named anywhere in the lease, Defendant ER's logo is present on the first page, and its registered copyright is on the bottom of each page of the lease itself. *Id*. at 1-14.

10. Moreover, in the Certificate of Insurance provided to Plaintiff, the Certificate Holder is listed as "Equity Residential."

11. During the course of his move out, Plaintiff was in communications with two individuals: Ray Colon and Galib Uzeiroski. Both Mr. Colon and Mr. Uzeiroski maintain emails with Defendant ER's domain (@eqr.com). According to their LinkedIn profiles,[9] [10] both are employed by Defendant ER (now Vivmark Residential).

12. At no point during his tenancy did Plaintiff communicate with an employee of Defendant ERM. Based on a reasonable search conducted by Plaintiff's counsel, ERM does not have any employees. Rather, all employees are employees of Defendant ER. Nor can a phone number be located for Defendant ERM – all searches produce Defendant ER's contact information.

13. Defendant ER maintains control over the day-to-day business, including the handling of security deposits, conducted by its alter ego Defendant ERM. Because Defendants

[9] https://www.linkedin.com/in/galib-uzeiroski-a510b9381

[10] https://www.linkedin.com/in/ray-colon

acted jointly, with the knowledge and approval of the other, to commit a wrong against Plaintiff and Class Members, they are referred to jointly throughout this complaint and can be held liable as alter egos.

**B. Plaintiff**

14. Plaintiff Elliott Werner resides in New York, New York and is therefore a citizen of New York.

15. In November 2023, Mr. Werner signed a lease to rent an apartment unit from Defendants located at 41 West 86th St., New York, New York, 10024 for $3,061 per month. The lease was scheduled to end on or around February 23, 2025.

16. 41 West 86th St. is a residential rental building that houses 166 units and is known as Parc Cameron.

17. At or around the same time that he signed the lease, Mr. Werner paid a security deposit totaling $1,000 to Defendants.

18. Mr. Werner ultimately moved out on or around February 23, 2025.

19. On or around March 14, 2025, nineteen days after Mr. Werner moved out, Defendants posted a statement to an online portal reflecting charges against his deposit, including a $117.36 "Apartment Cleaning" fee, a $142.36 "Apartment Painting" fee, and a $109.32 "Insufficient Notice" fee.

20. Defendants have failed to return Mr. Werner's full security deposit.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100

members of the putative class, and at least one class member is a citizen of a state different than Defendants.

22. This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### A. New York General Obligations Law § 7-108

24. On June 14, 2019, the Housing Stability and Tenant Protection Act (HSTPA) was signed into law to address significant and longstanding issues in New York's housing market.

25. The HSTPA added and amended various provisions of New York state housing laws to better protect tenant interests and to protect New Yorkers from landlord exploitation.

26. New York General Obligations Law § 7-108, as amended by the HSTPA, set forth new procedures that landlords of non-rent stabilized apartments must comply with in handling tenants' security deposits.

27. It provides, in relevant part, that:

> (b) The entire amount of the deposit or advance shall be refundable to the tenant upon the tenant's vacating of the premises except for an amount lawfully retained for the reasonable and itemized costs due to non-payment of rent, damage caused by the tenant ***beyond normal wear and tear***, non-payment of utility charges payable directly to the landlord under the terms of the lease or tenancy, and moving and storage of the tenant's belongings. ***The landlord may not retain any amount of the deposit for costs relating to ordinary wear and tear of occupancy or damage caused by a prior tenant.***
>
> . . .
>
> (e) ***Within fourteen days*** after the tenant has vacated the premises, the landlord shall provide the tenant with an itemized statement indicating the basis for the amount of the deposit retained, if any, and shall return any remaining portion of the deposit to the tenant. If a landlord fails to provide

> the tenant with the statement and deposit within fourteen days, the landlord shall ***forfeit any right*** to retain any portion of the deposit.
> . . .
> (g) Any person who violates the provisions of this subdivision shall be liable for actual damages, provided a person found to have willfully violated this subdivision shall be liable for punitive damages of up to twice the amount of the deposit or advance**.**
> . . .
> (3) Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be absolutely void.

N.Y. Gen. Oblig. Law § 7-108(1-a)(b)-(g), (3) (McKinney) (emphasis added).

**B. Defendant deceptively retained Plaintiff's security deposit and charged illegal fees**

28. In November 2023, Plaintiff signed a lease with Defendant for the rental of an apartment unit located at 41 West 86th St, New York, New York, 10024 at a rent of $3,061 per month. The lease was scheduled to end on or around February 23, 2025.

29. At or around the same time that he signed the lease, Plaintiff paid a security deposit totaling $1,000 to Defendants.

30. The lease agreement stated that tenants "are responsible for keeping the Premises in a clean, sanitary, an undamaged, condition, ordinary wear and tear excepted." Ex. A, at 6. It further set forth that Defendants would conduct an inspection of Plaintiff's apartment after he moved out, charge for any damage beyond ordinary wear and tear, and refund to Plaintiff the remaining balance. *Id*.

31. On December 27, 2024, Plaintiff notified Defendants that he intended to move out upon the expiration of the lease.

32. In an email sent to Plaintiff on February 5, 2025 from Galib Uzeiroski, a leasing specialist for Defendant ER, Defendants stated that any charges for damages to the apartment would be included in a "Statement of Deposit that will be mailed to you" and that Plaintiff could expect to receive the remaining refund "approximately 4 weeks after [Plaintiff's] move out date."

33. Plaintiff ultimately moved out on February 23, 2025, and Defendants conducted an inspection of Plaintiff's apartment shortly thereafter.

34. However, Defendants never returned Plaintiff's full security deposit. Instead, on March 14, 2024, 19 days after Plaintiff moved out, Defendants uploaded a statement to an online resident portal.

35. The statement indicated various wear and tear charges against Plaintiff's deposit, including a $117.36 "Apartment Cleaning" fee and a $142.36 "Apartment Painting" fee. The statement does not provide any further specification as to what part of the apartment was in need of cleaning or painting or how the fee amounts were calculated.

36. On April 1, 2025, after seeing the statement on his online portal, Mr. Werner emailed Ray Colon, his point of contact for his move out, and inquired about the charges to his account and when he could expect to receive his deposit back.

37. Mr. Colon is an Assistant Community Manager at Defendant ER and was in charge of Mr. Werner's building.

38. Ten days later, on April 10, 2025, Mr. Werner followed up with Mr. Colon again after not receiving a response to his initial email. In his April 10, 2025 email, Mr. Werner told Mr. Colon that he would like clarification on some of the fees, as well as "reimbursements of the cleaning and painting fee charges that were deducted from my security deposit."

39. Mr. Werner further stated to Mr. Colon that "NYC tenant law requires landlords to return the security deposit within 14 days after a tenant vacates the unit. By now, it has been nearly two months since I moved out, and I have yet to receive my deposit or the $816.24 flood credit. I also haven't received any response to my previous inquiry." Mr. Werner provided a mailing address for his deposit to be returned to.

40. On that same day, April 10, 2025, Mr. Colon responded to Mr. Werner via email stating that "the paint and cleaning charges are determined by the condition of the apartment immediately after you move out." Mr. Colon did not address reimbursement of Mr. Werner's security deposit.

41. The condition of Mr. Werner's apartment at the time of move out had no damages beyond ordinary wear and tear, if any at all. This is especially true given the fact that just a month before moving out, Defendants hired a professional cleaning company to clean Mr. Werner's unit after it had flooded.

42. Defendants do not, and cannot, reference any specific conditions within the apartment which amount to damage beyond ordinary wear and tear of occupancy as would be necessary to impose such charges under New York law.

43. Plaintiff has still not received his full security deposit.

44. Defendants' post-move out inspection revealed only superficial marks or dirtiness in certain areas of the apartment. Indeed, the "General Notes" section of the inspection contains a documentation that the "[a]partment [was] in good condition."

## CLASS REPRESENTATION ALLEGATIONS

45. Plaintiff seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the United States, paid a security deposit to Defendants, and had unlawful deductions from their deposit for ordinary wear and tear ("Nationwide Class").

46. Plaintiff seeks to represent a class defined as all persons who rented a residential apartment from Defendants in the State of New York, paid a security deposit to Defendants, and had unlawful deductions from their deposit for ordinary wear and tear ("New York Subclass").

47. The Nationwide Class and the New York Subclass, will be referred to collectively as the "Classes."

48. **Numerosity.** Members of the Nationwide Class and the New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Nationwide Class and the New York Subclass number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class and members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

49. **Commonality.** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include but are not limited to, the following:

(a) Whether Defendants charged Class members for costs relating to ordinary wear and tear;

(b) Whether Defendants made breached its contract with Plaintiff and Class members;

(c) Whether Plaintiff and Class members are entitled to damages.

50. **Typicality.** The claims of the named Plaintiff are typical of the claims of the Classes and the New York Classes in that the named Plaintiff never received his full security deposit back and had deductions from his security deposit for ordinary wear and tear.

51. **Adequacy.** Plaintiff is an adequate representative of the Class and the New York Classes because his interests do not conflict with the interests of the classes he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of class members will be fairly and adequately protected by Plaintiff and his counsel.

52. **Superiority.** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the classes. Each individual member of the Classes and the New York Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## FIRST CAUSE OF ACTION
### Violation of the N.Y. Gen. Oblig. Law § 7-108 (1-a)(b)

53. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

54. Plaintiff brings this claims on behalf of himself and the New York Subclass.

55. N.Y. Gen. Oblig. Law § 7-108(1-a)(b) states that for rentals of "all dwelling units in residential premises," "The entire amount of the deposit or advance shall be refundable to the tenant upon the tenant's vacating of the premises except for an amount lawfully retained for the reasonable and itemized costs due to non-payment of rent, damage caused by the tenant beyond normal wear and tear, non-payment of utility charges payable directly to the landlord under the terms of the lease or tenancy, and moving and storage of the tenant's belongings. The landlord may not retain any amount of the deposit for costs relating to ordinary wear and tear of occupancy or damage caused by a prior tenant."

56. Defendants retained from Plaintiff's security deposit a $117.36 "Apartment Cleaning" fee and a $142.36 "Apartment Painting" fee.

57. Per Defendants' email sent on or around April 10, 2025, the charges were "determined by the condition of the apartment immediately after [Mr. Werner] move[d] out."

58. However, the move out inspection conducted by Defendants revealed only superficial marks or dirtiness in certain areas. The move-out inspection revealed no damage beyond ordinary wear and tear of occupancy.

59. Defendants were thus not entitled to retain any portion of Plaintiff's security deposit for the cost of cleaning or painting the apartment after Plaintiff had moved out.

60. Defendants have similarly retained the security deposits of New York Subclass members for ordinary wear and tear in violation of N.Y. Gen. Oblig. Law § 7-108(1-a)(b).

61. On behalf of himself and the New York Subclass members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover his actual damages, punitive damages as the Court finds appropriate, and reasonable attorneys' fees.

## <u>SECOND CAUSE OF ACTION</u>
**Breach of Contract**

62. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

63. Plaintiff brings this claim on behalf of himself and the Classes.

64. Plaintiff and all members of the Classes have contracted with Defendant ER, Defendant ERM, or any of Defendant ER's alter egos for the lease of a rental apartment.

65. In the lease agreement, Defendants represent that renters are not responsible for cost related to ordinary wear and tear, stating "[tenants] are responsible for keeping the Premises in a clean, sanitary, an undamaged, condition*, ordinary wear and tear excepted.*" Ex. A, at 6

(emphasis added). Further, the lease agreement states that, "after you move out, we will inspect the condition of the Premises, and charges, against your Total Deposits, for any damages beyond ordinary wear and tear, excessive cleaning or trash removal charges, as well as any outstanding balances you owe to us." Ex. A, at 4.

66. Defendants breached promises made to Plaintiff and all members of the proposed Classes, as described herein, when Defendants charged tenants for cost relating to ordinary wear and tear and thus unlawfully retained tenants' security deposits.

67. On behalf of himself and the Class members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover his actual damages, punitive damages as the Court finds appropriate, and reasonable attorneys' fees.

## RELIEF DEMANDED

68. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes, and Plaintiff's attorneys as Class Counsel to represent the Classes;

b. For an order declaring that Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief; and

g. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 18, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Tel. (914) 874-0710
Fax. (914) 206-3656
E-Mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Israel Rosenberg
Caroline C. Donovan
1330 Avenue of the Americas, Floor 32
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: irosenberg@bursor.com
cdonovan@bursor.com

*Attorneys for Plaintiff*